ATTORNEY FOR APPELLANT
James D. Crum
Coots, Henke & Wheeler, P.C.
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE
Steve Carter
Attorney General of Indiana

Mara McCabe
Deputy Attorney General
Indianapolis, Indiana

In the

# Indiana Supreme Court

No.  29S02-0701-CR-00005

JUAN J. VASQUEZ,                                            *Appellant (Defendant below),*

v.

STATE OF INDIANA,                                          *Appellee (Plaintiff below).*

Appeal from the Hamilton Circuit Court, No. 29C01-0502-FB-27
The Honorable Judith S. Proffitt, Judge

On Petition To Transfer from the Indiana Court of Appeals, No. 29A02-0512-CR-1153

**June 22, 2007**

**Dickson, Justice.**

The defendant, Juan J. Vasquez, appeals his conviction of burglary[1] on the sole ground that the trial court improperly excluded the testimony of a late-disclosed witness.  The Court of Appeals affirmed the trial court's conviction in a memorandum decision.  We granted transfer, vacating the Court of Appeals opinion, Ind. Appellate Rule 58, and now reverse the trial court.

---

[1] A jury found the defendant guilty on all counts charged: Count I, burglary, a class B felony; Count II, residential entry, a class D felony; and Count III, attempted theft, a class D felony.  The trial court merged Counts II and III into Count I and sentenced the defendant to eight years in the Department of Corrections.

The background facts are substantially undisputed. On February 9, 2005, Rafael Aguilera called the Noblesville dispatch reporting that he believed people were breaking into his residence. Officer Michael Friebel arrived at the residence and arrested Marcos Cardoza, but heard other suspects leaving the scene. Officer Jeremy Stanley, who was assisting Officer Friebel, saw two males running from Aguilera's residence. They escaped into a wooded area. Canine units searched the woods but lost the scent of the suspects at the edge of a river. Yuriko Diaz testified that the defendant and Jonathan Orellana arrived at her home early in the morning on February 8th or 9th and that they appeared wet. Cardoza, who together with the defendant and Jonathan Orellana had attended a party hosted by Juan Cortez on the evening before the break-in, testified that the defendant was one of the men who burglarized Aguilera's residence with him.

On the first day of trial, the defendant informed his attorney for the first time of a potential witness for the case. The defendant speaks only Spanish and his attorney does not. That day the defense notified the State about this witness and that this witness would be called to testify. While the State believed it would take about three days to present its case, it rested part-way through the second day of trial, at which time the defendant asked the trial court to allow him to add Rodrigo Perez to his witness list. The State objected, and the trial court, after hearing arguments from both sides, denied the defendant's request, finding that the State was unduly surprised and prejudiced by the attempted inclusion of the witness. Tr. at 200. When the trial resumed the next morning, the defendant made an offer to prove, during which Perez testified that he had overheard Cardoza and Cortez at the party stating that they were "going to somebody's home," *id*. at 213, and that "if something happened and if [Cardoza] was detained or arrested, he was going to—or he should blame everything on Juan [Vasquez] and Jonathan," *id*. at 214. Explaining the late disclosure of this witness, the defendant's attorney told the court:

> Mr. Vasquez advised me of Rodrigo Perez on the day of jury selection. I notified [the prosecutor] at that time. We'd never been notified—or I'd never been notified of him before. Obviously, communication with my client has been difficult during the term of representation because of the language barrier. I've been able to communicate with him via letter that's been translated into Spanish and he apparently has been able to secure translation at the jail to write back. But I've not been able to communicate at the jail, so communication has been difficult. I say that simply because of the issues that <u>Williams</u> asks the Court to look at is whether or not there was any purposeful or intentional non-disclosure, if you will, and that certainly has not been the case. It's just one of the unfortunate circumstances here.

*Id.* at 222-23. After further colloquy, the defense again urged the court to allow the testimony and grant a brief continuance so the State could investigate Perez's testimony. The State said that the continuance would take "upwards of at least a week," explaining that "[w]e're talking about every witness that we're going to have to investigate his claim with probably being Spanish-speaking, which adds a level of difficulty." *Id.* at 226. Finding that "there would be a substantial prejudice to the State if this witness were permitted to be added to the witness list," the trial court again denied the defendant's request to add Perez as one of his witnesses. *Id.* at 228.

The defendant argues that the trial court abused its discretion by excluding the testimony of Rodrigo Perez in violation of the defendant's right to compulsory process under the Sixth Amendment to the U.S. Constitution[2] and Article 1, § 13 of the Indiana Constitution.[3] He asserts that the exclusion of this witness had a substantial impact on the trial outcome. Acknowledging that "[a] trial court has the discretion 'to exclude a belatedly disclosed witness when there is evidence of bad faith on the part of counsel or a showing of substantial prejudice to the State,'" Appellant's Br. at 7 (quoting Williams v. State, 714 N.E.2d 644, 651 (Ind. 1999)), the defendant asserts that any prejudice to the State was slight and could have been alleviated by a short continuance, that there is no allegation that the late disclosure was the result of bad faith, and that Perez's testimony was extremely important to the defense.

"The trial court has inherent discretionary power on the admission of evidence, and its decisions are reviewed only for an abuse of that discretion." Jones v. State, 780 N.E.2d 373, 376 (Ind. 2002); *see also* Stroud v. State, 809 N.E.2d 274, 283 (Ind. 2004) ("To reverse a trial court's decision to exclude evidence, which we review for an abuse of discretion, there must be (1) error by the court, (2) that affects Defendant's substantial rights, and (3) the defense must have made an offer of proof or the evidence must have been clear from the context."). Likewise, we leave to the trial court decisions regarding the orderly procedure of a trial. State *ex. rel.* White v. Marion Superior Court, Criminal Division, No. 3, 271 Ind. 174, 175-76, 391 N.E.2d 596, 597 (Ind.

_____

[2] The Sixth Amendment to the United State Constitution provides: "In all criminal prosecutions, the accused shall enjoy the right . . . to have compulsory process for obtaining witnesses in his favor . . . ."

[3] The relevant portion of Article 1, § 13 of the Indiana Constitution is nearly identical to the Sixth Amendment: "In all criminal prosecutions, the accused shall have the right . . . to have compulsory process for obtaining witnesses in his favor."

1979); State *ex. rel.* Rooney v. Lake Circuit Court, 236 Ind. 345, 348, 140 N.E.2d 217, 219 (1957); Hyatte v. Lopez, 174 Ind.App. 149, 152, 366 N.E.2d 676, 678 (1977). And where a trial court has made a decision regarding a violation or sanction, we will reverse only if there is clear error and resulting prejudice. Bradley v. State, 770 N.E.2d 382, 387 (Ind. Ct. App. 2002), *trans. denied*.

While wide discretion is given to the trial court in such matters as the course of proceedings, exclusion of evidence, and violations, in making its decisions, the trial court must give substantial weight to a defendant's constitutional rights, here the right to compulsory process under the Sixth Amendment to the U.S. Constitution and Art. 1, § 13 of the Indiana Constitution. The U.S. Supreme Court has made clear that, depending on the circumstances, excluding a witness may be appropriate or it may be unconstitutional. Taylor v. Illinois, 484 U.S. 400, 407-16, 108 S.Ct. 646, 652-56, 98 L.E.2d 798, 809-15 (1988). Indiana jurisprudence recognizes a strong presumption to allow defense testimony, even of late-disclosed witnesses: "The most extreme sanction of witness exclusion should not be employed unless the defendant's breach has been purposeful or intentional or unless substantial and irreparable prejudice would result to the State." Wiseheart v. State, 491 N.E.2d 985, 991 (Ind. 1986).

As both parties have identified, this Court has provided factors that are helpful in determining whether to exclude a witness:

> (i) when the parties first knew of the witness; (ii) the importance of the witness's testimony; (iii) the prejudice resulting to the opposing party; (iv) the appropriateness of lesser remedies such as continuances; and (v) whether the opposing party would be unduly surprised and prejudiced by the inclusion of the witness's testimony.

Williams, 714 N.E.2d at 651 n.5; Cook v. State, 675 N.E.2d 687, 691 n.3 (Ind. 1996); *accord* Wiseheart v. State, 491 N.E.2d 985, 991 (Ind. 1986).

Applying these factors, the defendant contends that the late-disclosed witness should not have been excluded. He explains that the defense counsel first knew of the witness on the first day of trial and immediately informed the State; that the witness's testimony was extremely important to the defense, as it indicated that others had planned in advance to falsely blame the de-

4

fendant for the burglary; and that the State would not have suffered surprise or been unduly prejudiced had a continuance been granted.

Discussing these same factors, the State argues that the trial court properly exercised its discretion in excluding the testimony. It argues that "the extreme sanction of witness exclusion was proper because substantial and irreparable harm would result to the State if Perez had been allowed to testify." Appellee's Br. at 8. Explaining that the defendant did not disclose to the State the possibility of Perez as a witness until the first day of trial and did not move to have Perez added until near the end of the second day of trial after the State had rested its case, the State concludes that "Perez was not a late discovered witness, he was merely a late noticed witness." *Id*. at 6. The State also argues that the defendant neither gave the State the witness's identity on the first day nor requested a continuance at that time. *Id*. at 7. The State acknowledges that the witness's testimony would "rebut the testimony of [the State's prime witness] and would be important to Defendant's case" but argues that "such importance must be weighed against the prejudice to the opposing party." *Id*. The State also contends that a continuance of at least one week would be required to find other witnesses and take statements because most of the people involved in the case are Spanish-speaking, that the defense might then need another week to prepare rebuttal witnesses, and that such a continuance granted after the State rested and before the defendant presented evidence would result in stale prosecution evidence for jury deliberations.

Applying the five considerations noted in Williams, Cook, and Wiseheart, we conclude that it was error to preclude Perez as a witness for the defense. While the facts do not indicate when the defendant himself learned of this witness, the defendant's attorney did not learn of this witness until the first day of trial, at which time the defense notified the State, although not formally asking to modify its list of witnesses until the close of the State's case in chief the next day. We discern no intentional concealment, improper strategic manipulation, or bad faith on the part of defense counsel. Both parties agree that this witness is significant. But the late addition of Perez to the list of trial witnesses undoubtedly presented a substantial challenge to the State's trial strategy. And while a brief continuance may have lessened the elements of surprise and prejudice to the State by enabling it to adequately prepare to cross-examine and rebut the new testimony, such resulting delay, even if for only a few days, would potentially diminish the effect

5

of the testimony already presented in the State's case in chief. An accused citizen's rights to present evidence and to have a fair trial, however, are of immense importance. We again emphasize that "there is a strong presumption to allow the testimony of even late-disclosed witnesses," Williams, 714 N.E.2d at 651. We conclude that the defense should have been permitted to present Perez's testimony and that the proper exercise of discretion favored a brief continuance instead of witness exclusion.

An erroneous exclusion of evidence does not, however, require a reversal if "its probable impact on the jury, in light of all of the evidence in the case, is sufficiently minor so as not to affect the defendant's substantial rights." Williams, 714 N.E.2d at 652; *accord* Fleener v. State, 656 N.E.2d 1140, 1142 (Ind. 1995); Ind. Trial Rule 61. The State does not argue harmless error but commendably acknowledges that Perez's probable testimony would have been important to the defendant's case. Appellee's Br. at 7. The exclusion of Perez as a defense witness in this case significantly impinged upon defendant's substantial rights.

We reverse the judgment of the trial court and remand for a new trial.

Shepard, C.J., and Sullivan, Boehm, and Rucker, JJ., concur.