**Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**



FILED

Jun 06 2012, 8:39 am

CLERK
of the supreme court,
court of appeals and
tax court

ATTORNEY FOR APPELLANT:

**VALERIE K. BOOTS**
Marion County Public Defender
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**JODI KATHRYN STEIN**
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| ERIC LISCOMB, | ) |
| | ) |
| Appellant-Defendant, | ) |
| | ) |
| vs. | ) No. 49A02-1108-CR-715 |
| | ) |
| STATE OF INDIANA, | ) |
| | ) |
| Appellee-Plaintiff. | ) |

APPEAL FROM THE MARION SUPERIOR COURT
The Honorable Carol J. Orbison, Judge
Cause No. 49G22-1007-MR-56779

**June 6, 2012**

**MEMORANDUM DECISION - NOT FOR PUBLICATION**

**ROBB, Chief Judge**

## Case Summary and Issues

Following a jury trial, Eric Liscomb appeals his convictions of murder, a felony, robbery, a Class B felony, carrying a handgun without a license, a Class A misdemeanor, and conspiracy to commit robbery, a Class C felony, and sixty-five-year aggregate sentence thereon. He raises two issues for our review, which we restate as: whether the trial court erred in allowing the State to enter into evidence a statement Liscomb made to police, and whether his sentence is inappropriate in light of the nature of his offenses and character. Concluding that the trial court committed harmless error, if at all, and that his sentence is not inappropriate, we affirm.

## Facts and Procedural History

Liscomb, Norman Barker, Jessica Brackett, and Jessica Owens together decided to rob Robert Spaulding because they believed he had large amounts of cash and marijuana in his home. Barker volunteered use of his .40 caliber semi-automatic and .38 caliber revolver. On July 20, 2010, Brackett drove the four to a store to purchase ammunition, and later that night drove the four to Spaulding's neighborhood. Spaulding was home with his fiancée, their two-year-old daughter, and a group of friends and family. Spaulding's friends and family left around 10 p.m., and at around midnight, Spaulding's fiancée left the home to check in on a family member's pet, leaving Spaulding alone sleeping on the couch and their daughter in a nearby bedroom.

Soon thereafter, Brackett and Owens stayed in the parked car while Liscomb and Barker, armed with Barker's two guns, walked to Spaulding's home and into his open front door.

Several of Spaulding's neighbors happened to be on their front porches at this time, at least one of whom was doing so as part of a neighborhood watch group. Neighbors observed Barker and Liscomb walk up to and into Spaulding's home, and at least one neighbor could see right into Spaulding's living room, where the ensuing struggle took place. Once inside Spaulding's home, Barker and Spaulding struggled with each other hand-to-hand, and Liscomb fired multiple shots. Barker and Liscomb soon ran from Spaulding's home and back to the car where Brackett and Owens were waiting.

Neighbors rushed to Spaulding's home, found him laying face down with a gunshot wound to his back, and called 911 at 12:16 a.m. Spaulding was dead within ten minutes.

Barker had a gunshot wound to his left arm and was bleeding heavily. Brackett began driving to a hospital, but pulled over at a gas station because it appeared Barker would lose consciousness. The four decided on a fake story to tell authorities: Owens and Barker were walking along the street, someone in a car driving past them shot Barker, and the two then called Brackett and Liscomb to come to their aid. After this story was decided upon and while Brackett was still driving, Brackett shouted, "[t]hrow the gun out the window." Id. at 417. Liscomb screamed, "[g]o straight, go straight, you can't be this close to a robbery." Id. at 416-17. Meanwhile, Owens called 911 on Brackett's cellular phone, also at 12:16 a.m., relayed the fake story, and officers met them at the gas station.[1]

---

[1] During the investigation which ensued, officers listened to a recording of Owens's 911 call and in the background heard Brackett's statement about throwing the gun out the window and Liscomb's statement that they should be farther from the scene of the robbery.

Barker was transported to a hospital for treatment and hours later was taken to the police station for questioning because officers suspected he was involved in the incident at Spaulding's home. Brackett, Owens, and Liscomb agreed to be questioned at the police station as well and were transported from the gas station directly there, but at this point the three were considered witnesses to what happened to Barker and not suspects regarding the incident at Spaulding's.

Liscomb was placed in an interview room shortly after 1:00 a.m. and the door was locked, but he was not handcuffed, he was permitted to use the restroom as he requested, he was provided with water, and at some point he was permitted to receive food which Brackett brought to him. At 7:24 a.m., Detective Brian Schemenaur and Detective Jeffrey Wager entered Liscomb's interview room and began to speak with him. They recorded this conversation with a hand-held audio recorder but did not video-record this statement. Liscomb told officers the fake story upon which the group agreed. Detectives Schemenaur and Wager then left Liscomb in the same room while they spoke with Barker.

After speaking with Barker, Detectives Schemenaur and Wager considered Liscomb a suspect in Spaulding's killing as well. At 11:51 a.m., they returned to Liscomb's interview room after turning on a video and audio recording device for that room, and again brought a hand-held audio recording device. Detective Brian Schemenaur began advising Liscomb of his rights, and Liscomb asked that they shut off the hand-held recording device, which they did. They did not terminate the room's video and audio recording or tell him that he was still being recorded.

4

Liscomb proceeded to speak with them and provide a story substantially different from his first statement. He admitted he agreed with Barker to commit a robbery, Ex. at 156, 171, 183-84, 194, that he went with Barker to and into Spaulding's home, and that he fired his gun at the pair who were wrestling in front of him, id. at 162, 164, 167, 190. He also stated that he used a .38 caliber revolver, id. at 169-70, and that he does not know what happened to Barker's gun, id. at 191.

Owens later told her uncle about what happened and that Liscomb threw a gun behind the gas station. Owens witnessed her uncle retrieve the gun and turn it over to police. A forensic scientist later testified that the bullet found in Spaulding's back, which was deemed to be the cause of death, was fired by the .38 caliber revolver which Owens's uncle retrieved. Tr. at 342. The .40 caliber semiautomatic which Barker used was found on the floor of Spaulding's home, with one bullet jamming the gun and an otherwise full cartridge of ammunition.

The State charged Liscomb with murder, a felony, felony murder, robbery, a Class A felony, carrying a handgun without a license, a Class A misdemeanor, and conspiracy to commit robbery, a Class A felony. At a jury trial, Detective Schemenaur briefly reiterated the fake story Liscomb told him and Detective Wager during the first statement. The State also presented the jury with the video and audio recording of Liscomb's second statement.

The jury found Liscomb guilty as charged and, following a sentencing hearing, the trial court merged the felony murder count into the murder count and reclassified the robbery and conspiracy to commit robbery counts downward to avoid violation of double jeopardy principles. The trial court entered a judgment of conviction regarding murder as

5

a felony, robbery as a Class <u>B</u> felony, carrying a handgun without a license as a Class A misdemeanor, and conspiracy to commit robbery as a Class <u>C</u> felony. The trial court then sentenced Liscomb to sixty-five years for murder, concurrent with twenty years for robbery, concurrent with 365 days for carrying a handgun without a license, concurrent with eight years for conspiracy to commit robbery. Liscomb now appeals. Additional facts will be supplied as appropriate.

<u>Discussion and Decision</u>

I.  Liscomb's First Statement to Police

A.  Standard of Review

Before delving into discussion of the issues, we pause to clarify Liscomb's appellate challenge regarding his statement to police which he alleges was erroneously introduced into evidence. He made two statements to police within twenty-four hours after Spaulding was killed. The first was from around 7:30 a.m. to around 8:00 a.m., and the second was from around 11:50 a.m. to around 12:30 p.m. On appeal he contends the trial court erred in allowing Detective Schemenaur to testify regarding what Liscomb said during his first statement.

A "trial court has inherent discretionary power on the admission of evidence, and its decisions are reviewed only for abuse of that discretion." <u>Vasquez v. State</u>, 868 N.E.2d 473, 476 (Ind. 2007) (quoting <u>Jones v. State</u>, 780 N.E.2d 373, 376 (Ind. 2002)). An abuse of discretion occurs "where the decision is clearly against the logic and effect of the facts and circumstances." <u>Bradford v. State</u>, 960 N.E.2d 871, 873 (Ind. Ct. App. 2012) (quoting <u>Smith v. State</u>, 754 N.E.2d 502, 504 (Ind. 2001)). We do not reweigh the evidence, we consider conflicting evidence in a manner most favorable to the trial court's

ruling, and we consider uncontested evidence in a manner favorable to the defendant. Hirshey v. State, 852 N.E.2d 1008, 1012 (Ind. Ct. App. 2006) (quotations and citation omitted), trans. denied.

Liscomb gratuitously offers on appeal that he must meet the fundamental error standard of review because he failed to object at trial to what he now contends is an error. But Liscomb did object to the admission of the evidence he now challenges. Tr. at 417-18. Therefore, we review the trial court's admission of such evidence for an abuse of discretion.

### B. Harmless Error

Even when reviewing the admission of this evidence for an abuse of discretion, we will not reverse Liscomb's conviction if an error did not affect his substantial rights. See Combs v. State, 895 N.E.2d 1252, 1258 (Ind. Ct. App. 2008), trans. denied. If the erroneously admitted evidence is merely cumulative of other evidence in the record, it is harmless error and not grounds for reversal. Bryant v. State, 802 N.E.2d 486, 494 (Ind. Ct. App. 2004), trans. denied. If a conviction is supported by substantial independent evidence of guilt which satisfies the reviewing court that there is no substantial likelihood the challenged evidence contributed to the conviction, the error is harmless. Morales v. State, 749 N.E.2d 1260, 1267 (Ind. Ct. App. 2001). "Harmlessness is ultimately a question of likely impact of the evidence on the jury." Combs, 895 N.E.2d at 1258 (quotation omitted).

Liscomb essentially argues that his first statement – in which he told the fake story – should not have been allowed into evidence because officers obtained this statement improperly by not advising him of his Miranda rights before that statement or obtaining a

7

valid waiver of rights. The State responds that he was not a suspect at the time of his first statement, so a <u>Miranda</u> advisement was unnecessary at that time.

For the sake of argument, we might accept Liscomb's argument and conclude that his first statement was obtained improperly and what he said therein should not have been allowed into evidence. Even if we were to do so, our review of the trial court record leads us to conclude that any error in allowing this statement into evidence was harmless error because there is no substantial likelihood Detective Schemenaur's brief restatement of Liscomb's first statement impacted the evidence which the jury weighed or otherwise contributed to his convictions.

In Liscomb's second statement, which he does not now challenge, he admitted to committing several acts which support his convictions, and therefore the State's apparent attempt to impeach his credibility by referring to his prior inconsistent statement would not have mattered to the jury. Specifically, he stated that he was at Spaulding's home with Barker, he was armed with the .38 caliber revolver, and he fired his gun at the two who were wrestling in front of him. A forensic scientist later testified that the bullet which killed Spaulding was fired by the .38 caliber revolver which Liscomb referred to in this admission, his second statement.

This constitutes substantial independent evidence of guilt and makes clear there was no credibility issue as to his level of involvement which would lead the jury to impart any significance to the apparent inconsistency of Liscomb's first and second statements. In sum, we are convinced there is no substantial likelihood Detective Schemenaur's brief restatement of Liscomb's first statement impacted the evidence

8

which the jury weighed or otherwise contributed to his convictions, and his convictions are therefore affirmed.

## II. Inappropriate Sentence

Liscomb next argues his aggregate sentence of sixty-five years is inappropriate. This court has authority to revise a sentence "if, after due consideration of the trial court's decision, the Court finds that the sentence is inappropriate in light of the nature of the offense and the character of the offender." Ind. Appellate Rule 7(B). We may "revise sentences when certain broad conditions are satisfied," Neale v. State, 826 N.E.2d 635, 639 (Ind. 2005), and we recognize the advisory sentence "is the starting point the legislature has selected as an appropriate sentence for the crime committed." Weiss v. State, 848 N.E.2d 1070, 1072 (Ind. 2006). When examining the nature of the offense and the character of the offender, we may look to any factors appearing in the record. Spitler v. State, 908 N.E.2d 694, 696 (Ind. Ct. App. 2009), trans. denied. The burden is on the defendant to demonstrate that his sentence is inappropriate. Childress v. State, 848 N.E.2d 1073, 1080 (Ind. 2006).

In discussing whether Liscomb's sentence is inappropriate, it is helpful to restate the specific details of his current sentence. He was sentenced to sixty-five years for murder, a felony; a crime for which the sentencing range is forty-five to sixty-five years and the advisory sentence is fifty-five years. Ind. Code § 35-50-2-3(a). He was sentenced to twenty years for robbery as a Class B felony, for which the sentencing range is six to twenty years and the advisory sentence is ten years. Ind. Code § 35-50-2-5. He was sentenced to eight years for conspiracy to commit robbery as a Class C felony, for which the sentencing range is two to eight years and the advisory sentence is four years.

9

Ind. Code § 35-50-2-6. And finally, he was sentenced to 365 days for carrying a handgun without a license as a Class A misdemeanor, for which the maximum imprisonment is not more than one year. Ind. Code § 35-50-3-2. The trial court ordered that Liscomb serve the sixty-five-year, twenty-year, eight-year, and 365-day sentences concurrently, for a total of sixty-five years.

For the most part, the nature of these offenses is not significantly different from other robbery-murders which are committed with an unlawful handgun and as part of a conspiracy. But, there is some evidence that Liscomb was aware that Spaulding's two-year-old child was home during the incident, as Liscomb stated that Spaulding "kind of flipped out [when Barker went towards the farthest room in the house]. It might have been his child or something like that. . . ." Ex. at 189 (ellipses in original, all capitals omitted). It is therefore evident that Liscomb was aware that he was placing a child in grave danger by firing a gun in her presence, even though it is not completely clear whether Liscomb fired at Spaulding while in the same bedroom or while in another room of the home. There is also some evidence that Liscomb was under the influence of marijuana and/or prescription medications at the time of these offenses.

Liscomb's character warrants a more lengthy discussion because of his history of criminal involvement. In 2005, at the age of fourteen, officers arrested him for possession of marijuana or hash, a Class A misdemeanor if committed by an adult. The juvenile court entered a true finding, and he violated the terms of his home detention and probation at least twice. Later in 2005 and in 2006, Liscomb was arrested as a runaway twice, and for fleeing law enforcement, consumption of alcohol, attempted theft, and criminal mischief. Of these, true findings were entered as to fleeing law enforcement and

10

criminal mischief, and he failed to abide by the terms of his home detention and probation on at least four more occasions, not including his failure to pay various fees. In 2007, Liscomb admitted to stealing a car and using a stolen handgun to rob a pharmacy of prescription drugs. Liscomb also robbed a different pharmacy in a similar manner about two weeks earlier, as part of "a rash of robberies during a month period." Pre-Sentence Investigation Report ("PSI") at 6. For this conduct the trial court entered a true finding as to robbery and attempted robbery, which would have been Class B felonies if committed by an adult. In 2008, Liscomb was arrested for battery and possession of alcohol by a minor.

As an adult, Liscomb was arrested in June 2009 for possession of a controlled substance as a Class D felony and possession of marijuana or hash as a Class A misdemeanor, and was convicted of possession of a controlled substance as a Class A misdemeanor. He was ordered to serve a 365-day sentence on home detention, and upon violating the terms of his home detention, he served a period in the Indiana Department of Correction. Just five months after Liscomb was released from prison, he committed the current offenses.

The PSI also reveals that at the time of these offenses Liscomb provided for himself by "hustling," and that his interests and leisure activities include "smoking weed." Id. at 12. He first consumed alcohol at the age of thirteen, and began regularly using marijuana at that time as well. At the time of the offense he was consuming about four to five grams of marijuana per day. He began abusing prescription medications at the age of fourteen and began regularly consuming large amounts of those medications.

11

This includes 300 milligrams of morphine daily. He has also used methamphetamine and cocaine several times, although he claims inconsistent use thereof.

Even aside from the sheer length of Liscomb's history of criminal conduct, this summary is also troubling because of the recurring themes of drug abuse and unlawful use of a handgun. Liscomb has been offered the favor of probation several times and has violated the terms of his probation several times as well. The PSI suggests he has grown accustomed to a criminal lifestyle of drug abuse, obtaining money unlawfully, and flouting any legal limitations on his behavior. For these reasons, an enhanced sentence for the offense of murder is not inappropriate. Further, the fact that the trial court ordered that he serve all of the sentences concurrently, rather than consecutively, provides additional support for our conclusion that a total of sixty-five years in prison is not inappropriate in light of his character.

We note that the abstract of judgment states that the trial court entered a judgment of conviction and sentenced Liscomb for the offenses of murder as a felony, robbery as a Class A felony, carrying a handgun without a license as a Class A misdemeanor, and conspiracy to commit robbery as a Class A felony. Appellant's Appendix at 22. This is incorrect. As indicated in the transcript, the trial court entered a judgment of conviction for murder as a felony, robbery as a Class B felony, carrying a handgun as a Class A misdemeanor, and conspiracy to commit robbery as a Class C felony. Tr. at 581-82. The abstract of judgment must be corrected to reflect Liscomb's convictions. These corrections, however, will not affect his sentence.

12

## Conclusion

For the trial court to allow the State's witness to testify regarding Liscomb's first statement to police was harmless error, if error at all. Further, Liscomb's sentence is not inappropriate in light of the nature of his offenses and character. Therefore, we affirm his convictions and sentence. We also remand and order the trial court to correct the incorrect classifications of Liscomb's offenses on the abstract of judgment.

Affirmed and remanded.

BAILEY, J., and MATHIAS, J., concur.