**Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**



FILED

Dec 21 2012, 9:22 am

CLERK
of the supreme court,
court of appeals and
tax court

ATTORNEY FOR APPELLANT:

**GARY GRINER**
Mishawaka, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**KARL M. SCHARNBERG**
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| MICHAEL R. ANDERSON, JR., | ) | |
| | ) | |
| Appellant-Defendant, | ) | |
| | ) | |
| vs. | ) | No. 71A04-1204-CR-220 |
| | ) | |
| STATE OF INDIANA, | ) | |
| | ) | |
| Appellee-Plaintiff. | ) | |

APPEAL FROM THE ST. JOSEPH SUPERIOR COURT
The Honorable Jane Woodward Miller, Judge
Cause No. 71D01-1104-FD-323

**December 21, 2012**

**MEMORANDUM DECISION - NOT FOR PUBLICATION**

**PYLE, Judge**

## STATEMENT OF THE CASE

Michael R. Anderson Jr. ("Anderson") appeals his convictions for operating a motor vehicle while never having received a driver's license as a class C misdemeanor,[1] possession of marijuana as a class A misdemeanor,[2] and possession of marijuana as a class D felony.[3] We affirm.

## ISSUES

1. Whether the trial court erroneously denied Anderson's request to call a late witness.

2. Whether the trial court erroneously instructed the jury.

## FACTS

On April 2, 2011, Officer Eric Schlegelmilch ("Officer Schlegelmilch") of the South Bend Police Department was patrolling in his marked police car along Lincolnway West. Around midnight, Officer Schlegelmilch saw a white Pontiac Grand Prix with "heavy, thick window tint", which prevented him from seeing how many occupants were inside. (Tr. 50). Officer Schlegelmilch activated his emergency lights, and the Pontiac pulled into the parking lot of a gas station.

The driver, subsequently identified as Anderson, exited the Pontiac. At some point, Anderson dropped a "clear, plastic baggie with a green, leafy substance…." (Tr.

---

[1] Indiana Code § 9-24-18-1

[2] I.C. § 35-48-4-11(1)

[3] I.C. § 35-48-4-11(3)

56).   Believing that the bag contained marijuana, Officer Schlegelmilch approached Anderson and placed him under arrest.   After obtaining identifying information from Anderson, Officer Schlegelmilch searched the Bureau of Motor Vehicles database for the status of Anderson's driver's license.   The search revealed that Anderson had never received a driver's license.

During Anderson's arrest, Officer Anthony Dawson ("Officer Dawson") arrived and searched the Pontiac.   Between "the [driver's] seat and the center console [Officer Dawson] found another clear, cellophane bag with suspected marijuana inside." (Tr. 83).   Officer Kyle Dombrowski ("Kyle Dombrowski") took several photographs at the scene and collected the bags of marijuana.   Afterwards, Officer Jonathan Gray ("Officer Gray") used a "Narco Pouch" field test kit to determine that the substance in the bags was marijuana.   (Tr. 105).   In addition, Officer Gray transported Anderson to the St. Joseph County Jail.   Upon arriving at the jail, Anderson was searched as a part of the book-in process.   During the search, a jail deputy discovered another "small baggie of a green, leafy substance" in Anderson's "left coat pocket."   (Tr. 109).   The contents of the  bag tested positive for marijuana.

On April 29, 2011, the State charged Anderson with Count I, operating a vehicle while never receiving a driver's license, a class C misdemeanor; Count II, possession of marijuana, a class A misdemeanor; and Count III, possession of marijuana, a class D felony.   Anderson subsequently filed a motion seeking to suppress the evidence collected by law enforcement.

3

Anderson's bifurcated jury trial was held on December 15 and 16, 2011. Prior to the presentation of evidence, the trial court heard evidence on Anderson's motion to suppress. The motion was denied. During the State's presentation of evidence, Officers Schlegelmilch, Dawson, Dombrowski, and Gray testified. After the officers testified, the State concluded its presentation. The jury was then excused and the trial court met with the attorneys to talk about what final instructions would be given to the jury. After the parties came to an agreement as to the final instructions, Anderson informed the trial court that he had decided not to testify. As the trial court was about to have the jury returned to the courtroom, Anderson's counsel informed the trial court that he had been approached by Anderson's girlfriend, Ashley Star ("Star") with relevant evidence. Anderson's counsel stated that Star would testify about the Pontiac, and that she was in possession of several photographs, taken in daylight, that showed the level of tint on its windows. The State objected, arguing (1) that it had no notice of Star's anticipated testimony; and (2) that this "new" evidence was the result of collusion between Star and Anderson, as she had been in the courtroom during the suppression hearing and portions of the trial. Taking into account the State's arguments, the trial court denied Anderson's request to have Star testify because (1) the pictures were irrelevant as to the issue of possession of marijuana; (2) the request was untimely; and (3) the jury had already been informed that the trial was concluding on that day. When the jury returned to the courtroom, Anderson's counsel indicated that no further evidence would be presented.

4

The jury subsequently found Anderson guilty of Counts I and II. Afterwards, the jury was excused and the parties agreed to allow the trial court to hear evidence on Count III, possession of marijuana as a class D felony. The parties stipulated to the accuracy of the certified documents showing that Anderson had previously been convicted of possession of marijuana. As a result, the trial court found Anderson guilty of Count III.

On April 20, 2012, the trial court sentenced Anderson to concurrent terms of sixty (60) days on Count I and eighteen (18) months on Count III, all to be served at the Department of Correction. Anderson now appeals.

DECISION

*I. Exclusion of Witness:*

Trial courts are given considerable discretion in decisions regarding the orderly procedure of a trial, and we review those decisions for an abuse of discretion. *Vasquez v. State*, 868 N.E.2d 473 (Ind. 2007). However, trial courts must be mindful that the Sixth Amendment of the Federal Constitution grants a criminal defendant the right to call witnesses to testify on his or her behalf. "Few rights are more fundamental than that of an accused to present witnesses in his own defense, . . . ." *Taylor v. Williams*, 484 U.S. 400, 408 (1988). As a result, depending on the circumstances, excluding a witness may be appropriate or it may be unconstitutional. "Indiana jurisprudence recognizes a strong presumption to allow defense testimony, even of late-disclosed witnesses: 'The most extreme sanction of witness exclusion should not be employed unless the defendant's

5

breach has been purposeful or intentional or unless substantial and irreparable prejudice would result to the State'" *Vasquez*, 868 N.E.2d at 476 (quoting *Wisehart v. State*, 491 N.E.2d 985, 991 (Ind. 1986)). When the trial court has made a decision to exclude a witness because of a procedural violation or as a sanction, "we will reverse only if there is clear error and resulting prejudice." *Id.*

Here, we find that the trial court did not erroneously exclude Star's testimony. Anderson's counsel was first made aware that Star wanted to testify after evidence was closed and final jury instructions had been assembled. If normal discovery procedures had been followed, each party would have disclosed witnesses in a timely fashion. This would have given each side the opportunity to seek a separation of witnesses order.[4] However, because no one was aware of Star's status as a witness, she was able to remain in the courtroom during the trial and suppression hearing. As a result, it is highly likely that Star's testimony would have been improperly designed to counter the testimony of the State's witnesses. This explanation is made more likely since Anderson's counsel did not even know about the photographs until evidence had closed. For this reason alone, we find that the sudden appearance of Anderson's girlfriend as a witness was likely designed to purposefully or intentionally avoid the trial discovery process. *Vasquez*, 868 N.E.2d 473. Therefore, the trial court did not err.

---

[4] Indiana Rule of Evidence 615 allows either party to seek an order excluding witnesses who will testify from the courtroom. The purpose of an order separating witnesses is to prevent later witnesses from hearing the questioning and testimony of earlier witnesses; allowing witnesses to remain in the courtroom might enable a witness to tailor his or her testimony to correspond more closely to the testimony of witnesses on one side or the other. *Williams v. State*, 924 N.E.2d 121 (Ind. Ct. App. 2009); *Smiley v. State*, 649 N.E.2d 697 (Ind. Ct. App. 1995); *Bell v. State*, 495 N.E.2d 526 (Ind. 1986).

## II. Jury Instructions:

> The purpose of jury instructions is to inform the jury of the law applicable to the facts without misleading the jury and to enable it to comprehend the case clearly and arrive at a just, fair, and correct verdict. In reviewing a trial court's decision to give a tendered jury instruction, we consider (1) whether the instruction correctly states the law, (2) is supported by the evidence in the record, and (3) is not covered in substance by other instructions. The trial court has discretion in instructing the jury, and we will reverse only when the instructions amount to an abuse of discretion. To constitute an abuse of discretion, the instructions given must be erroneous, and the instructions taken as a whole must misstate the law or otherwise mislead the jury. We will consider jury instructions as a whole and in reference to each other, not in isolation.

*O'Connell v. State*, 970 N.E.2d 168, 172 (Ind. Ct. App. 2012) (quoting *Munford v. State*, 923 N.E.2d 11, 14 (Ind. Ct. App. 2010)). In addition, "[e]rrors in the giving or refusing of instructions are harmless where a conviction is clearly sustained by the evidence, and the instruction would not likely have impacted the jury's verdict." *Atwood v. State*, 905 N.E.2d 479, 486 (Ind. Ct. App. 2009), *trans. denied.*

Anderson argues that the trial court "provided confusing and inconsistent instructions to the jury." Appellants's Br. at 6. Specifically, Anderson argues that certain instructions informed the jury that the State must prove each element beyond a reasonable doubt. Additionally, he argues that another instruction, regarding an affirmative defense, stated that Anderson had the burden of proving this defense by a preponderance of the evidence. Further, Anderson asserts that the trial court did not provide a definition of the phrase "preponderance of the evidence." As a result, Anderson claims that the instructions were in conflict, leading to an unreliable verdict.

It is well settled that the burden of proving

> all elements of a criminal offense beyond a reasonable doubt rests with the State. This ultimate burden of persuasion never shifts to the defendant, and the raising of an affirmative defense does not relieve the State of its ultimate burden of proof. However, while the State is ultimately responsible for proving every element beyond a reasonable doubt, the State does not bear the burden of negating all affirmative defenses that justify or excuse conduct which would otherwise be criminal. Thus "there is a difference between affirmative defenses that establish separate and distinct facts in mitigation of culpability and affirmative defenses that negate an element of the crime." That difference is that it is only unconstitutional to place the burden of persuasion for an affirmative defense on the defendant when proving the defense becomes tantamount to requiring the defendant to negate an element of the crime.

*Geljack v. State*, 671 N.E.2d 163, 164-165 (Ind. Ct. App. 1996) (citations omitted).

With respect to Count I (driving while never receiving a license), the trial court instructed the jury that the State was required to prove the following elements beyond a reasonable doubt: (1) Anderson; (2) operated; (3) a motor vehicle; (4) upon a highway; and (5) while never having received a driving license. (App. 24); *See also* Ind. Code § 9-24-18-1. However, the trial court also instructed the jury that, "The burden is on the defendant to prove by a preponderance of the evidence that he had been issued a driver's license or permit that was valid at the time of the alleged offense." (App. 29). This instruction informs the jury that Anderson had the burden of proving an element of the charged crime, namely a valid license. As a result, it is erroneous. *See Geljack*, 671 N.E.2d at 164-165.

However, this does not end our inquiry. While the instruction was erroneous, it may be found to be harmless error if (1) the conviction is clearly sustained by the

8

evidence, and (2) the instruction did not likely have an impact on the verdict. *Atwood*, 905 N.E.2d at 486. Here, the testimony of the South Bend police officers, combined with Anderson's Bureau of Motor Vehicles report, clearly support his conviction. (State's Ex. 4a). Further, Anderson presented no evidence that would have allowed the jury to consider the erroneous instruction. As a result, the instruction is not likely to have had any impact on the verdict. Therefore, any error was harmless.

Affirmed.

FRIEDLANDER, J., and BROWN, J., concur.