## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Aug 24 2016, 10:26 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Barbara J. Simmons
Oldenburg, Indiana

ATTORNEYS FOR APPELLEE

Gregory F. Zoeller
Attorney General of Indiana

Ellen H. Meilaender
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

James Alexander,
*Appellant-Defendant,*

v.

State of Indiana,
*Appellee-Plaintiff.*

August 24, 2016

Court of Appeals Case No.
49A02-1601-CR-2

Appeal from the Marion Superior Court

The Honorable Marshelle Dawkins Broadwell, Commissioner

Trial Court Cause No.
49G17-1503-CM-7218

**Najam, Judge.**

## Statement of the Case

[1] James Alexander ("Alexander") appeals his conviction, following a bench trial, for invasion of privacy as a Class A misdemeanor. He raises one issue on appeal, namely, whether the trial court abused its discretion when it excluded the testimony of his witness. Having concluded that the trial court did not abuse its discretion, we affirm.

## Facts and Procedural History

[2] Alexander and Ms. Chaklan Lacy ("Lacy") were in a relationship from January until April of 2014. In July 2014, Alexander was convicted of battery and sentenced to four years in the Marion County Community Corrections Program on work release. As a condition of Alexander's probation, the Marion Superior Court issued a no-contact order under which Alexander was prohibited from having any contact with Lacy "in person, by telephone or letter, through an intermediary, or in any other way, directly or indirectly, except through an attorney of record." State's Ex. 5.

[3] On September 11, 2014, at a time when the no-contact order was in effect, Lacy received a telephone call from Alexander's sister, Deidra Culpepper ("Culpepper"), with whom Lacy had become friendly during her relationship with Alexander. Although Lacy did not recognize the telephone number from which the call originated, she recognized Culpepper's voice from having spoken with her over one hundred times in the past. In the background of the telephone conversation, Lacy heard Alexander's voice coming from

Culpepper's end of the telephone call, and she heard him instructing Culpepper to ask Lacy what she did with his belongings. Culpepper then asked Lacy what she did with Alexander's belongings.

[4] On March 9, 2015, the State charged Alexander with two counts of invasion of privacy as a Class A misdemeanor due to his alleged violations of the no-contact order. On August 25, Alexander's counsel deposed Lacy. On November 2 and December 7, the court held a bench trial on Count II,[1] which related to the September 11, 2014, telephone call. Culpepper's role as the intermediary in that telephone call was set out in the probable cause affidavit filed on March 9, but the State did not list Culpepper as a witness it intended to call on its March 9 charging information.[2]

[5] On the morning of the first day of trial, November 2, Alexander filed a witness list indicating for the first time that he intended to call Culpepper as a witness, although the list did not provide any address or other contact information for Culpepper. After hearing Alexander's explanation for the late disclosure of his witness, the trial court stated that the situation felt "like gamesmanship," but it continued the trial anyway to December 7 so that the State could have an opportunity to depose Culpepper. Tr. at 6.

---

[1] Count I, which related to an alleged incident on July 10, 2014, was dismissed by the trial court on the State's motion.

[2] Although the charging information contained in the record on appeal does not contain a State's witness list, all parties and the trial court agreed that such a list was located at the bottom of the March 9 charging information and that that list did not include Culpepper.

[6]     On November 4, the State filed notice of its intent to depose Culpepper on November 13 at 3:00 p.m. Culpepper failed to appear for that deposition. Alexander's counsel subsequently informed the prosecutor that Culpepper had missed the deposition because she works in the afternoons, and he asked for a morning deposition to accommodate her schedule. On November 16, the State filed notice of its intent to depose Culpepper on December 4 at 10:00 a.m. Culpepper failed to appear for the deposition. Alexander's counsel informed the prosecutor later that morning that Culpepper had failed to appear because she was at a dental appointment. Alexander's counsel suggested that Culpepper could be available that afternoon, but the prosecutor was not available at that time. That same day the State filed a motion to exclude Culpepper as a witness based on her failure to appear for two properly-noticed, scheduled depositions for which she had been subpoenaed.

[7]     At the December 7 hearing, the trial court granted the State's motion to exclude Culpepper as a witness. Noting that a subpoena for a deposition is "not an invitation, it's a court order," and that Lacy was once again missing work to be at the hearing, the trial court disagreed with Alexander's suggestions that, instead of excluding Culpepper's testimony, the court should continue the hearing again or allow the State to talk to Culpepper out in the hallway. Tr. at 11. The trial court also disagreed with Alexander's suggestion that the hearing be bifurcated so that Lacy could testify that day and Culpepper could testify at a later date, after the State was able to depose her. The trial court stated that it would have been willing to do that "but for the fact that it's [the court's]

impression that the reason that this person isn't being made available to the State is because of gamesmanship." *Id*. at 13-14. The trial court continued, "I don't know on whose part [the gamesmanship is], probably on Ms. Culpepper['s] part[,] but I don't know that for a fact[,] and[,] at this point, we're going to proceed." *Id*. at 14.

[8] At the conclusion of the hearing, the trial court found Alexander guilty on Count II. In reaching its conclusion, the court stated that the State had proven Alexander's guilt beyond a reasonable doubt, "regardless of what the um, individual who call[ed] Ms. Lacy may or may not have said." Tr. at 36. The trial court based its decision on Lacy's testimony "that she heard [Alexander during the telephone call] and she [was] familiar with [Alexander's] voice because she was in a relationship with [him]," and that Lacy had heard Alexander "say to the person that was on the phone with [Lacy] . . . [to] ask [Lacy] about some clothing and what happened to the clothing." *Id*.

[9] After the trial court's sentencing statement, Alexander's counsel made an offer of proof as to Ms. Culpepper's excluded testimony. Defense counsel noted that Ms. Culpepper would have testified that she had not spoken to Lacy on the telephone since April 21, 2014, and that she did not contact Lacy via telephone on behalf of Alexander "during the time he was on work release." *Id*. at 41. This appeal ensued.

# Discussion and Decision

[10] Alexander maintains that the trial court erred in excluding Culpepper from testifying on his behalf. A trial court has broad discretion in ruling on the admission of evidence, and we review those rulings only for an abuse of discretion. *See, e.g.*, *Vasquez v. State*, 868 N.E.2d 473, 476 (Ind. 2007).

> To reverse a trial court's decision to exclude evidence, . . . there must be (1) error by the court, (2) that affects Defendant's substantial rights, and (3) the defense must have made an offer of proof or the evidence must have been clear from the context. Likewise, we leave to the trial court decisions regarding the orderly procedure of a trial. And where a trial court has made a decision regarding a violation or sanction, we will reverse only if there is clear error and resulting prejudice.

*Id*. (quotations and citations omitted).

[11] However, we also must give substantial weight to a defendant's constitutional right to compulsory process under the Sixth Amendment to the United States Constitution and Article 1, Section 13 of the Indiana Constitution. *Id*. Thus, we recognize a strong presumption to allow defense testimony, even of late-disclosed witnesses. *Id*. In determining whether excluding a witness violates a defendant's right to compulsory process, we consider the following five factors:

> (i) when the parties first knew of the witness; (ii) the importance of the witness's testimony; (iii) the prejudice resulting to the opposing party; (iv) the appropriateness of lesser remedies such as continuances; and (v) whether the opposing party would be unduly surprised and prejudiced by the inclusion of the witness's testimony.

*Id.* (citing *Williams v. State*, 714 N.E.2d 644, 651 n.5 (Ind. 1999); *Cook v. State*, 675 N.E.2d 687, 691 n.3 (Ind. 1996)). Moreover, a trial court has the discretion to exclude a belatedly disclosed witness when there is evidence of bad faith on the part of counsel or a showing of substantial prejudice to the State. *Id.* at 475 (citing *Williams*, 714 N.E.2d at 651).

[12] Here, a consideration of the five factors leads us to conclude that the trial court did not abuse its discretion in excluding Culpepper as a defense witness. Alexander acknowledges on appeal that he believed Culpepper's testimony would have been "of extreme importance to [his] defense." Appellant's Br. at 14. And Alexander was aware from the beginning of this case that Culpepper played a role in the September 11, 2014, telephone call that was the basis for Count II, as her role was noted in the March 9 probable cause affidavit. Alexander also knew from the March 9 list of the State's witnesses that the State did not intend to call Culpepper at trial. Thus, Alexander knew for over six months before the initial trial date that Culpepper was a potential witness who the State did not intend to call. That was more than sufficient time for Alexander to decide to list Culpepper as a witness for the defense; to do so only on the morning of the first day of trial was unreasonable. *See, e.g.*, *Crocker v. State*, 378 N.E.2d 645, 647 (Ind. Ct. App. 1978).

[13] And the State would have been prejudiced by any of the alternative solutions to an exclusion of Culpepper's testimony, such as a second continuance or a bifurcated hearing. The State and the trial court both had made prior efforts to accommodate Alexander and Culpepper by continuing the first hearing and

rescheduling depositions. To require Lacy to miss work a third time to accommodate Alexander's last-minute request for a second continuance would have been prejudicial to Lacy and the State.

[14]   Moreover, the trial court correctly considered what appeared to be "gamesmanship" by the defense. *See, e.g.*, *Wisehart v. State*, 491 N.E.2d 985, 991 (Ind. 1986). The trial court noted that the defense offered no good reason why Alexander waited until the morning of the first scheduled hearing to list Culpepper as a witness and no good reason for Culpepper's repeated failures to appear at depositions for which she had been subpoenaed. *See, e.g.*, *Hatfield v. Edward J. DeBartolo Corp.*, 676 N.E.2d 395, 398-99 (Ind. Ct. App. 1997), *trans. denied*.

[15]   Further, the State would have been prejudiced if it had been required to talk to Culpepper in the hallway before trial rather than questioning her in a deposition. Alexander had an opportunity to depose the State's witness, Lacy. There is no apparent reason why the State should not have also had such an opportunity to depose Alexander's witness. *See Wisehart*, 491 N.E.2d at 991 (noting that Indiana courts require "that discovery rules be fairly balanced between the State and the defendant").

[16]    The trial court did not abuse its discretion in excluding Culpepper as a witness.[3] However, we note that, even if the court had erroneously excluded the evidence, the error would have been harmless as the identity of the person who initiated the telephone call had no impact on the trial court's decision. *See, e.g.*, *Vasquez*, 868 N.E.2d at 477 (holding that an "erroneous exclusion of evidence does not . . . require a reversal if its probable impact on the [fact finder], in light of all of the evidence in the case, is sufficiently minor so as not to affect the defendant's substantial rights."). The trial court specifically noted that it was basing its decision not on the identity of the person who initiated the September 11 telephone call but on Lacy's positive identification of Alexander's voice telling the initiator of the call to ask Lacy a question. Thus, we affirm the trial court's judgment.

[17]    Affirmed.

Vaidik, C.J., and Baker, J., concur.

---

[3] We do not address Alexander's unsupported, categorical assertion that the exclusion of evidence should be reversed "when the excluded evidence challenged the credibility of the State's investigation and witnesses; presented an alternative, exculpatory explanation of the State's evidence; or showed that someone else could have committed the crime," Appellant's Br. at 13, because Alexander provides no citation to authority for this statement or argument as to how the statement applies to this case. Ind. Appellate Rule 46(A)(8)(a) ("Each contention must be supported by citations to the authorities, statutes, and the Appendix or parts of the Record on Appeal relied on."); *Pierce v. State*, 29 N.E.3d 1258, 1267 (Ind. 2015) (noting failure to support arguments with appropriate citations to legal authority and record evidence waives those arguments for our review).