# FOR PUBLICATION



ATTORNEY FOR APPELLANT:

**ANDREW J. BALDWIN**
Baldwin Adams & Kamish
Franklin, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**MONIKA PREKOPA TALBOT**
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| MICHAEL W. SLOAN, | ) | |
| | ) | |
| Appellant-Defendant, | ) | |
| | ) | |
| vs. | ) | No. 41A01-1312-CR-526 |
| | ) | |
| STATE OF INDIANA, | ) | |
| | ) | |
| Appellee-Plaintiff. | ) | |

APPEAL FROM THE JOHNSON CIRCUIT COURT
The Honorable K. Mark Loyd, Judge
Cause No. 41C01-1106-FB-23

**September 18, 2014**

**OPINON - FOR PUBLICATION**

**BROWN, Judge**

Michael W. Sloan appeals his conviction and sentence for child molesting as a class A felony. Sloan raises two issues, which we revise and restate as:

I. Whether the trial court abused its discretion by excluding certain evidence; and

II. Whether the court abused its discretion in sentencing him.

We affirm in part, reverse in part, and remand.

## FACTS AND PROCEDURAL HISTORY

In the early morning hours of June 23, 2011, K.W. and her friend J.W. were at Sloan's home. At the time, K.W., who was born on September 9, 1997, was thirteen years old, J.W. was nineteen or twenty years old, and Sloan, who was born on April 26, 1989, was twenty-two years old. At some point when K.W. was asleep on the couch, Sloan woke her up, carried her from the couch to his bed, removed her and his own clothing, and placed his penis inside her vagina. Sloan told K.W. that "if he got caught that he would tell them that he was drunk and [K.W.] raped him." Transcript at 87.

At approximately 7:00 p.m. on June 23, 2011, Sloan went to the Edinburgh Police Department and reported to Officer Dwayne Little "that he had been raped, and [Sloan] believed it was by his cousin, [K.W.]." Id. at 15. Sloan told Officer Little that he had been drinking the previous night, that he had met a Mexican male in the alley way who offered him a couple of beers, and that he consumed the beers and approximately three quarters of a fifth of vodka. Sloan stated that he went inside his residence and found J.W. and K.W. asleep on the couch, that he then went to sleep, and that "sometime overnight he got a weird feeling." Id. at 18. When further questioned, Sloan reported that "he believed that [the] weird feeling was him ejaculating." Id. at 19. Sloan stated that "it was

2

really, really dark in his apartment" and that he "woke up when he had this weird feeling and he looked up and saw somebody getting off of him and walking towards the bathroom" and that "he was so tired that he went back to sleep, or passed out." Id. Sloan also reported that he woke up at approximately 9:30 a.m. and rushed to work, that "about 9:50ish [] he felt [] a sticky feeling," that he went to the bathroom to investigate the feeling, that he saw residue on his skin, and that he "thought maybe it had been an ejaculation." Id. at 20. Sloan stated that he had spoken to J.W., "who said that it wasn't her that had sex with him," and because only J.W. and K.W. were in his house, "he believed that it was his cousin, [K.W.]." Id. at 22.

The police picked up K.W. from Sloan's residence.[1] K.W. told Officer Little that she had been dating Sloan for two and a half weeks, and she reported the facts above. Police collected the clothing of K.W. and Sloan and mouth swabs from K.W. and Sloan. K.W. was taken to the hospital for a sexual assault examination, and Sloan submitted to a sexual assault examination. Subsequent testing showed there were DNA mixtures found on K.W.'s underwear and on external genital swabs taken during K.W.'s examination and that Sloan could not be excluded as a contributor.

The State charged Sloan with child molesting as a class A felony in its amended information.[2] At the jury trial, the State presented the testimony of K.W., Officer Little, and a forensic analyst with the Indiana State Police consistent with the facts above. K.W.

---

[1] Officer Little testified that K.W. had been reported as a runaway. K.W. testified that she had run away more than one time in the past, but that the night of the offense was the first time she had stayed away from her home all night.

[2] The initial charging information alleging child molesting as a class B felony was filed on June 28, 2011, and an amended information alleging the offense as a class A felony was filed on October 3, 2011.

3

testified she had been dating Sloan for two and one-half weeks, that she was thirteen years old at the time of the offense, and that Sloan was awake the whole time they were having sex. When asked "did [Sloan] know how old you were," K.W. replied "[y]eah," and when asked "[h]ow did he know," she testified "[b]ecause we told him." Id. at 85. When asked "[w]hat did you tell him," K.W. testified "[t]hat I was thirteen (13)," and when asked "why did you tell him that," she said "[b]ecause he asked." Id. K.W. testified that she was five feet and one inch tall, weighed 103 pounds, and that she was no taller and weighed no more at the time of the offense. She also testified that Sloan was taller and bigger than her. She testified she did not scream out at the time of the offense because she was scared of Sloan. On cross-examination, K.W. indicated that no one had been smoking marijuana or spice that night. When asked if she had talked to Sloan's mother on the phone that night or the next day, K.W. answered "No," and when asked if she knew Sloan's mother, K.W. stated "No." Id. at 117. K.W. also stated that she did not talk to anyone on the telephone during the time she was at Sloan's house.

Following K.W.'s testimony, Sloan's counsel asked to approach the bench to address an issue outside the presence of the jury. Sloan's counsel indicated it was the intent of the defense to ask that K.W. be recalled for omitted questions regarding her date of birth and that "the Defense has now a rebuttal witness to here [sic] testimony, which was not disclosed and who was in the courtroom during the testimony of [K.W.]." Id. at 125. The State objected and argued that there was a separation of witnesses order and the proposed witness had heard the testimony of everybody who had been in court. The court asked the point which defense counsel wished to address on rebuttal, and defense

4

counsel answered that K.W. had repeatedly stated that she did not talk to anyone on the phone the night while she was at Sloan's residence, that the defense had "a witness to whom she spoke that night and that would be the mother of [Sloan]," and that K.W. had "indicated that there was no drinking that night" and that Sloan's mother would "testify that she was told there was drinking." Id. at 126. The following exchange then occurred between Sloan's defense counsel and the court:

| | |
|---|---|
| Defense Counsel: | [Sloan's mother] will testify . . . that she was told that [K.W.] was twenty (20) years of age and told by [K.W.], and that [K.W.] was told that because she was underage and there was drinking she needed to leave. |
| Court: | Okay. Well, you've known this since the very start of the case, so, no, you can't use her for that purpose. Because you knew that and when you saw the probable cause affidavit, why you guys would have not put her on the witness list to challenge that issue is absolutely beyond me at this stage. So, consequently you can't use her for that purpose. I'm not sure I understand the relevance of whether or not, uh, she spoke to someone on the phone that night. |
| Defense Counsel: | It goes to her credibility on the issue of whether or not she is telling the truth. |
| Court: | Well, okay, if you want to call . . . my inclination is if you want to call the mother to indicate whether or not she spoke to her on the phone or not, that's the one issue that is new. The other ones you guys waived when you knew it existed. |
| Defense Counsel: | So that I'm clear and we don't screw up here Judge, or I don't screw up, and Lord knows I've done it before, uh, it is okay to ask her if there was a conversation that night, but not about the age, her statement about the age? |
| Court: | Correct. Yeah, you knew that, you knew that way before this case . . . . |

5

| | |
|---|---|
| Defense Counsel: | The age, okay. |
| Court: | And you also knew about the drinking. |
| Defense Counsel: | Okay. |
| Court: | So those issues, uh, . . . . you kept a witness in here and you knew you wanted to address and, uh, and on a separation of witness order you asked for, uh, so accordingly those issues, uh, I'm not going to now, uh, relieve you of the separation of witness order that you asked for. |

Id. at 126-128.

Sloan's counsel asked to make an offer of proof for the record, and the court granted the request. Outside the presence of the jury, Sloan's counsel called Sloan's mother, Paula Smith, to the stand. Sloan's counsel elicited testimony from Smith that she received a telephone call from Sloan at about 2:00 a.m. on June 23, 2011, and Sloan told her that that he had been up for several days, that he had been smoking spice, that he had some people in his house, that he wanted to go to bed, and that the people would not leave. The following exchange then occurred between defense counsel and Smith outside the presence of the jury:

| | |
|---|---|
| Smith: | I talked to a lady on the phone. |
| Defense Counsel: | And who was that? |
| Smith: | [J.W.]. |
| Defense Counsel: | Okay. |
| Smith: | Uh, she said to me that she was twenty (20) years old. And I told her, uh, [Sloan] had also mentioned that he had a little bit to drink, I said, "You're under age," I said, "You do not need to be there." Uh, I threatened |

|  | to call the police on her to have her removed from the home, which I should have. |
|---|---|
| Defense Counsel: | Did you talk to [K.W.]? |
| Smith: | It, that, it was . . . I'm sorry. It was [K.W.] that I spoke to, that said she was twenty (20) years old. |
| Defense Counsel: | Okay. |

Id. at 131. Smith also indicated that she had never met or seen K.W. and had not spoken to K.W. or heard her voice before that night.

Later, in the presence of the jury, K.W. was recalled to the stand. Sloan's counsel elicited testimony from K.W. that her birth date was September 9, 1997. When asked if she had ever told anybody that her birthday was a date other than September 9, 1997, K.W. answered "No." Id. at 195. Sloan's counsel asked K.W. about a Facebook page which contained K.W.'s name and photograph and which showed K.W.'s date of birth as September 9, 1992, and K.W. testified that the Facebook page did not belong to her, that it belonged to another "kid named Jake." Id. at 196. Upon questioning by the prosecutor, K.W. indicated that she had a Facebook page but that the one presented was not hers. The prosecutor asked K.W. if she ever "entered anything on that Facebook page," and K.W. answered "I had it at first. But, then, I got in trouble and he had it. . . . And I've never been back on it." Id. at 197-198. When asked if she "put [her] date of birth on there as [] 9-9-92," K.W. answered "No." Id. at 198. When asked if the Facebook account was set up before June of 2011, K.W. answered "[m]ost likely, yes." Id. at 200.

Sloan's counsel then called Smith, Sloan's mother, to the stand before the jury, and Smith testified that she received a phone call from Sloan's telephone at around 2:00

7

a.m. on June 23, 2011, that she spoke with Sloan, and that she then spoke to a person who said her name was K.W. Smith indicated that she had not previously spoken to or seen K.W. Sloan's counsel then called Sloan to the stand. Sloan testified that he had not met K.W. prior to the date of the alleged offense and that he knew J.W.'s boyfriend at the time. Sloan indicated that he had not given permission for K.W. and J.W. to come over to his house and that he did not have any conversations with K.W. Sloan testified he returned from a party about 2:00 a.m. and called his mother, that he told his mother that there were people in his house and that he did not want them there, and that he had been drinking a little bit and did not like dealing with the cops. Sloan testified he had been smoking marijuana and spice. Sloan testified that, after he woke up, he went to work. Sloan testified he did not knowingly have sex with anyone the previous night. Sloan testified that he was never in a relationship or dating K.W., that he did not know K.W. until that night, that he had known J.W. for about a week, that he never told K.W. that, if she said he had sex with her, he would say that she had raped him. Sloan indicated that he concluded that he had been assaulted and that someone had forced themselves on him. When asked "did you tell Officer Little that it must have been [K.W.] that did it," Sloan answered "[i]t could have been" and "I did, I was not sure." Id. at 218.

The following exchange occurred between Sloan and his counsel:

Q.     Did [K.W.] tell you her age?

A.     Yes.

Q.     Okay. Uh, and that was after she left your house.

A.     Yes, sir.

8

Q.     Okay.

A.     It was upon arrival, sir.

Q.     Okay. Why would they do that? You don't normally . . . Strike. If you know, you don't normally tell a person your age when you arrive at their house.

A.     I asked them how old they were. And they both showed ID's [sic].

Q.     Okay. What were you concerned about?

A.     Them being in my home.

Id. at 222-223. Sloan later testified, in response from a juror question, that the identification K.W. showed him stated she was twenty years old. The jury found Sloan guilty as charged.

At sentencing, the court stated "[y]ou have done absolutely nothing, uh, during the course of the proceedings, uh, to assist me in understanding why this circumstance occurred, and why it's not going to occur again in the future" and "that because the most problematic, uh, aggravator in this sentencing [] because it does lead to the conclusion, [] from my standpoint" that "you are best confined [] in an institution until . . . we have an ability to start to control your behavior, put you in a position where you can protect yourself, and others can be protected from you . . . ." Id. at 332. The court further stated that it found Sloan's need for correctional treatment and lack of remorse to be aggravating circumstances. The court also found as a mitigating factor that Sloan had a minimal criminal record although he had visits to the juvenile justice and criminal justice systems, and then sentenced Sloan to thirty-five years in the Department of Correction.

9

DISCUSSION

I.

The first issue is whether the trial court abused its discretion by excluding the testimony Sloan wished to elicit from Smith that K.W. had stated on the telephone that she was twenty years old. Sloan contends that "[t]he age that K.W. represented herself to [him] the night in question was a key and necessary piece of evidence for [him]" and that, "[i]f the jury believed that [he] had a reasonable belief that K.W. was at least sixteen years of age, then it could have found him 'not guilty' based upon the statutory defense provided under I.C. 35-42-4-3(c)."[3] Appellant's Brief at 6. Sloan argues that, other than himself, "the only witness who could provide testimony that K.W. was presenting herself as a twenty year old the night in question was [his] mother," that "[w]hen combined with the fact that K.W. came to Sloan's house with a nineteen or twenty year old female, it would certainly make sense that Sloan could believe K.W. was also in that same age range as her friend," and that, "[w]ithout the key testimony, [he] was forced to testify in order to get that information in front of the jury, thereby subjecting him to vigorous and damaging cross-examination." Id. at 7-8. Sloan states that Smith may have never disclosed the phone call to Sloan's counsel and that Sloan and his counsel may not have known that they should place Smith on the witness list and have her stay out of the courtroom.

---

[3] At the time of the filing of Sloan's brief, Ind. Code § 35-42-4-3(c) provided in part that "[i]t is a defense that the accused person reasonably believed that the child was sixteen (16) years of age or older at the time of the conduct . . . ." (Subsequently amended by Pub. L. No. 168-2014, § 68 (eff. July 1, 2014) (amended section now found under subsection (d)).

The State maintains the court properly disallowed part of Smith's testimony, that it appears the prosecution did not know about Smith having any information regarding K.W.'s age, and that the importance of the desired testimony was low because Sloan's defense "was not that K.W. was over the age of consent" but "that he did not knowingly perform sexual intercourse with K.W. but that K.W. forced herself on him while he was asleep." Appellee's Brief at 10. The State further argues that a continuance "would not have been appropriate because there was no way to undo the harm caused by the fact that the undisclosed witness had sat through the trial, including K.W.'s testimony" and the State "would have been unduly surprised and prejudiced because it contradicted all previously available evidence, which suggested that [Sloan] knew K.W.'s age to be thirteen because she told him her age." Id. at 10-11. The State also contends that any error in excluding the desired testimony was harmless, noting that "the jury heard evidence about K.W. representing herself to be older than she actually was," K.W. was at Sloan's home with J.W. who was nineteen or twenty years old at the time, K.W. was questioned about her date of birth and her Facebook page, the Facebook page had been set up for her with her name and picture and a date of birth of September 9, 1992, and that Sloan himself testified that he had not known K.W. prior to that day and that K.W. showed him identification when she went to his home. The State also notes that Sloan's counsel argued in closing that the identification K.W. showed Sloan indicated she was twenty years old.

The trial court has inherent discretionary power on the admission of evidence, and its decisions are reviewed only for an abuse of that discretion. Vasquez v. State, 868

N.E.2d 473, 476 (Ind. 2007). Likewise, we leave to the trial court decisions regarding the orderly procedure of a trial. Id. Where a trial court has made a decision regarding a violation or sanction, we will reverse only if there is clear error and resulting prejudice. Id. The trial court must give substantial weight to a defendant's constitutional rights. Id. The Indiana Supreme Court has provided factors that are helpful in determining whether to exclude a witness: (i) when the parties first knew of the witness; (ii) the importance of the witness's testimony; (iii) the prejudice resulting to the opposing party; (iv) the appropriateness of lesser remedies such as continuances; and (v) whether the opposing party would be unduly surprised and prejudiced by the inclusion of the witness's testimony. Id. Generally, errors in the admission or exclusion of evidence are to be disregarded as harmless unless they affect the substantial rights of a party. Coleman v. State, 694 N.E.2d 269, 277 (Ind. 1998). In determining whether an evidentiary ruling affected a party's substantial rights, the court assesses the probable impact of the evidence on the trier of fact. Id.

The record reveals the State first learned of Sloan's desire to present the testimony of Smith following the presentation of K.W.'s testimony, and Smith was in court during the presentation of the evidence, including the testimony of K.W., although a separation of witnesses order had been issued on Sloan's request. According to the testimony of Sloan and the testimony of Officer Little regarding the statements Sloan made to him, Sloan believed he had been assaulted during the night and concluded that K.W. could have been the person who assaulted him. The evidence reveals that J.W. was nineteen or twenty years old at the time of the offense. The jury heard and observed K.W.'s

12

testimony in response to questions by the prosecutor and defense counsel about the fact that her name, photograph, and a date of birth of September 9, 1992, were shown on a Facebook page. Sloan testified he did not know K.W. prior to her arrival at his home and that K.W. showed him her identification stating she was twenty years old when she arrived at his home. Also, Sloan's counsel argued during closing arguments that K.W. presented identification to Sloan which showed that she was twenty years old.

Based upon the record, we conclude that the evidence that Sloan wished to elicit from his mother would not have had a probable impact on the jury, that the exclusion of this evidence did not affect Sloan's substantial rights, and that the trial court did not abuse its discretion in excluding this testimony. See Mathis v. State, 776 N.E.2d 1283, 1286-1287 (Ind. Ct. App. 2002) (holding that the trial court properly excluded evidence that would not have had any impact on the verdict), trans. denied.

## II.

The next issue is whether the court abused its discretion in sentencing Sloan. The Indiana Supreme Court has held that "the trial court must enter a statement including reasonably detailed reasons or circumstances for imposing a particular sentence." Anglemyer v. State, 868 N.E.2d 482, 490 (Ind. 2007), clarified on reh'g, 875 N.E.2d 218 (Ind. 2007). We review the sentence for an abuse of discretion. Id. An abuse of discretion occurs if the decision is "clearly against the logic and effect of the facts and circumstances before the court, or the reasonable, probable, and actual deductions to be drawn therefrom." Id. A trial court abuses its discretion if it: (1) fails "to enter a sentencing statement at all;" (2) enters "a sentencing statement that explains reasons for

imposing a sentence—including a finding of aggravating and mitigating factors if any—but the record does not support the reasons;" (3) enters a sentencing statement that "omits reasons that are clearly supported by the record and advanced for consideration;" or (4) considers reasons that "are improper as a matter of law." Id. at 490-491. If the trial court has abused its discretion, we will remand for resentencing "if we cannot say with confidence that the trial court would have imposed the same sentence had it properly considered reasons that enjoy support in the record." Id. at 491. However, the relative weight or value assignable to reasons properly found, or those which should have been found, is not subject to review for abuse of discretion. Id.

Sloan asserts the court abused its discretion in finding as an aggravating circumstance the fact that he did not provide an explanation for his criminal behavior and requests this court to strike the five-year aggravated executed time ordered by the trial court. The State argues that the aggravating factor challenged by Sloan was akin to a finding that Sloan did not express remorse, and that the trial court found other proper aggravating factors.

The court found the aggravating factors to be that Sloan did not provide an explanation of why he committed the offense, that he lacked remorse, and that he was in need of correctional treatment. We note that "[a] court may not enhance a sentence for a defendant consistently maintaining his innocence if the defendant does so in good faith." Cox v. State, 780 N.E.2d 1150, 1158 (Ind. Ct. App. 2002). A trial court may consider as an aggravator the defendant's lack of remorse. Id. A lack of remorse is displayed by a defendant "when he displays disdain or recalcitrance, the equivalent of 'I don't care.'"

14

Id. "This is distinguished from the right to maintain one's innocence, i.e., 'I didn't do it.'" Id.

Here, the court found Sloan did "absolutely nothing [] during the course of the proceedings to assist [the court] in understanding why this circumstance occurred, and why it's not going to occur again in the future," which the court found to be "the most problematic [] aggravator." Transcript at 332. Further, in identifying lack of remorse as an aggravator, the court noted Sloan's "inability . . . to at least . . . enunciate in any way, shape, or form, by your conduct, actions, or words [] a desire or ability to start a rehabilitative course that makes any kind of meaningful sense." Id. at 334. We find that these were improper bases to enhance Sloan's sentence in light of the record. See Cox, 780 N.E.2d at 1158. Sloan did not testify or present evidence at his sentencing hearing.[4] Sloan's position throughout trial was that he did not commit the charged offense but that he had been assaulted by K.W. while he was asleep or passed out. He did not argue that he did not have sex with K.W., but rather that he had been drinking, that he woke up and saw a person move off of him and toward the bathroom, and that he went back to sleep or passed out. Sloan was permitted to maintain his innocence of the charge against him in good faith; in fact it was his constitutional right to do so, and his position and statements at trial did not exhibit disdain or recalcitrance. The record does not support the court's finding that Sloan lacked remorse, and it was error for the court to use the fact that Sloan did not provide an explanation as to why he committed the offense to enhance his

---

[4] Sloan's counsel indicated counsel had been hired to pursue an appeal and potential post-conviction review.

15

sentence.[5]  See Kien v. State, 782 N.E.2d 398, 412 (Ind. Ct. App. 2003) (noting the defendant did not dispute that the victim had been sexually abused, but only that he was not the guilty party, that "it is not an aggravating factor for a defendant, in good faith, to consistently maintain his innocence through all stages of the criminal proceedings, including sentencing," and finding that the trial court should not have relied upon his maintaining his innocence as an aggravator), reh'g denied, trans. denied; Hollen v. State, 740 N.E.2d 149, 159 (Ind. Ct. App. 2000) (observing that the rejection of a defense by the finder of fact based upon corroborating evidence of guilt does not necessarily mean that the defense was asserted in bad faith, that otherwise a defendant "would be subjected to an enhanced penalty whenever he maintained his innocence and lost," and that there was no indication that the defendant's assertion of his innocence was in bad faith or amounted to disdain or recalcitrance, and holding that the trial court erred by enhancing the defendant's sentence on that basis), opinion adopted, 761 N.E.2d 398 (Ind. 2002); Cox, 780 N.E.2d at 1158 (noting that the trial court found the defendant failed to take responsibility for the action that led to his conviction, but that the defendant was doing no more than maintaining that he was innocent, and holding there was no indication that the statements made by the defendant in discussing the conviction were made in disdain or recalcitrance).

---

[5] The dissent references statements by the prosecutor at sentencing regarding a phone call made by Sloan from the Johnson County jail to a person named Ashley. The court allowed the phone call recording to be admitted, but said "I don't need to hear it," Transcript at 321, and indeed, the recording was not played. Further, the court made no reference to the phone call or recording in sentencing Sloan and the record is devoid of evidence that the court considered it in any way.

In addition, the Indiana Supreme Court has held that, when relying on the "in need of correctional treatment" aggravating circumstance, a trial court "must articulate why this specific defendant requires corrective or rehabilitative treatment." Ford v. State, 718 N.E.2d 1104, 1107 (Ind. 1999). In Ford, the trial court identified the defendant's previous unsuccessful attempts at rehabilitation as justification for imposing the maximum sentence as opposed to a more lenient sentence, and the Court found that "[t]his was sufficient to support the trial court's use of the 'in need of correctional treatment' aggravating circumstance." Id. Here, the trial court did not articulate why Sloan in particular required corrective or rehabilitative treatment. Rather, the court found Sloan's minimal criminal record to be a mitigating circumstance. The presentence investigation report provides that Sloan pled guilty to disorderly conduct as a class B misdemeanor as charged in 2010, and the State at sentencing noted that Sloan's defense counsel "properly stated [Sloan] does not have a criminal record." Transcript at 325. This criminal record does not support the trial court's use of the "in need of correctional treatment" aggravating circumstance.

We find the record does not support the aggravating circumstances found by the trial court. Accordingly, we conclude the court abused its discretion in enhancing Sloan's sentence by five years and remand with instructions to impose the advisory sentence of thirty years.

17

CONCLUSION

For the foregoing reasons, we affirm Sloan's conviction for child molesting as a class A felony, reverse the sentencing order, and remand with instructions to impose the advisory sentence of thirty years served in the Department of Correction.

Affirmed in part, reversed in part, and remanded.

BARNES, J., concurs.

BRADFORD, J., concurs in part and dissents in part with separate opinion.

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| MICHAEL SLOAN, | ) | |
| | ) | |
| Appellant-Plaintiff, | ) | |
| | ) | |
| vs. | ) | No. 41A01-1312-CR-526 |
| | ) | |
| STATE OF INDIANA, | ) | |
| | ) | |
| Appellee-Defendant. | ) | |

**BRADFORD, Judge, concurring in part, dissenting in part.**

I concur with the majority's conclusion that the trial court acted within its discretion in excluding certain evidence from trial. However, I respectfully dissent from the majority's conclusion that the trial court abused its discretion in sentencing Sloan.

## FACTUAL OVERVIEW

Although Sloan maintained his innocence throughout the underlying proceedings, the facts most favorable to the jury's determination are as follows: On June 23, 2011, thirteen-year-old K.W. fell asleep at Sloan's residence. Sloan was twenty-two years old at the time. At one point during the night, K.W., who was asleep on the couch, was "woken up" by Sloan carrying her to his bed. Tr. p. 81. Upon placing K.W. on his bed,

19

Sloan removed both his and K.W.'s clothing and placed his penis inside her vagina. Sloan told K.W. that if he "got caught he would tell them all that he was drunk and [K.W.] raped him." Tr. p. 87. K.W. had not seen Sloan drink any alcohol that night and was scared of Sloan who was much bigger than she was. After Sloan completed his act, K.W. got dressed and went to sleep on the couch.

## DISCUSSION AND DECISION

### Whether the Trial Court Abused Its Discretion in Sentencing Sloan

Sentencing decisions rest within the sound discretion of the trial court and are reviewed on appeal only for an abuse of discretion. *Anglemyer v. State*, 868 N.E.2d 482, 490 (Ind. 2007), *modified on other grounds on reh'g*, 875 N.E.2d 218 (Ind. 2007). "An abuse of discretion occurs if the decision is clearly against the logic and effect of the facts and circumstances before the court, or the reasonable, probable, and actual deductions to be drawn therefrom." *Id*. (quotation omitted).

> One way in which a trial court may abuse its discretion is failing to enter a sentencing statement at all. Other examples include entering a sentencing statement that explains reasons for imposing a sentence-including a finding of aggravating and mitigating factors if any-but the record does not support the reasons, or the sentencing statement omits reasons that are clearly supported by the record and advanced for consideration, or the reasons given are improper as a matter of law. Under those circumstances, remand for resentencing may be the appropriate remedy if we cannot say with confidence that the trial court would have imposed the same sentence had it properly considered reasons that enjoy support in the record.

*Id*. at 490-91.

In sentencing Sloan to a slightly aggravated thirty-five-year term of imprisonment, the trial court found three aggravating factors. Specifically, the trial court found Sloan's

alleged failure to enunciate a meaningful desire or ability to rehabilitate his wrongful behavior, the fact that Sloan was in need of correctional treatment, and Sloan's lack of remorse to be aggravating factors. On appeal, Sloan argues that the trial court abused its discretion in sentencing him because the above-stated factors were not supported by the record.

*Sloan's Alleged Failure to Enunciate a Meaningful Desire or*
*Ability to Rehabilitate His Wrongful Behavior*

It is well-established that Sloan had the absolute right to maintain his innocence and to assert that he did not commit any wrongful behavior. *Cox v. State*, 780 N.E.2d 1150, 1158 (Ind. Ct. App. 2002). Sloan's alleged failure to enunciate a meaningful desire or ability to rehabilitate his allegedly wrongful behavior was consistent with his good faith claim of innocence. As such, the trial court abused its discretion in finding Sloan's alleged failure to enunciate a meaningful desire or ability to rehabilitate his wrongful behavior to be an aggravating factor.

*Sloan's Need for Correctional Treatment*

The Indiana Supreme Court has previously held that "when relying on the 'in need of correctional treatment' aggravating factor, a trial court 'must articulate why this specific defendant requires corrective or rehabilitative treatment that could best be provided by commitment to a penal facility for a period of time in excess of the [advisory sentence].'" *Ford v. State*, 718 N.E.2d 1104, 1107 (Ind. 1999) (quoting *Beason v. State*, 690 N.E.2d 277, 282 (Ind. 1998)). The trial court did not make such a statement here. As a result, the trial court abused its discretion in finding that Sloan was "in need of correctional treatment" to be an aggravating factor.

21

During sentencing, the trial court stated as follows:

> Until we have some assurance, uh, that we have an ability to start to control your behavior, put you in a position where you can protect yourself, and others can be protected from you, uh, then there is no rational choice, uh, such as lower supervision, on probation, community corrections, etcetera.

Tr. pp. 332-33. This statement alone insufficiently articulated why the trial court believed that Sloan was in need of correctional treatment. However, it is worth noting that the trial court witnessed Sloan's attack on court personnel, attempted escape, and overall disdain for court orders immediately following the finding of guilt. Had the trial court also articulated this observation and Sloan's apparent disregard for the courts of this State as a justification for its determination, the trial court's articulation would have been sufficient to justify its determination that Sloan was in need of correctional treatment.

*Sloan's Lack of Remorse*

Again, while it is well-established that a court may not enhance a sentence for a defendant consistently maintaining his innocence, a defendant's lack of remorse may justify an appropriate aggravating factor.

> A court may not enhance a sentence for a defendant consistently maintaining his innocence if the defendant does so in good faith. *Bluck v. State*, 716 N.E.2d 507, 512 (Ind. Ct. App. 1999). However, a trial court may consider as an aggravator the defendant's lack of remorse. *Id*. at 513. A lack of remorse is displayed by a defendant when he displays disdain or recalcitrance, the equivalent of "I don't care." *Id*. This is distinguished from the right to maintain one's innocence, i.e., "I didn't do it." *Id*.

*Cox*, 780 N.E.2d at 1158.

The trial court acknowledged that Sloan had the right to maintain his innocence. (Tr. 331) The State, however, presented evidence at sentencing which displayed a lack of remorse that was completely separate from his continued good faith claim of innocence.

22

Specifically, the State presented evidence relating to a telephone call made by Sloan from the Johnson County Jail, during which he spoke to a person named Ashley. During this conversation, Sloan instructed Ashley to "[t]ell her to go kill f***ing [K.W.] because she's the reason I'm here." Tr. p. 320. Ashley then responded, "[y]ou've already got two (2) people going after her." Tr. p. 320. This conversation, again during which Sloan attempted to instruct others to kill his victim, independently demonstrates that Sloan lacked remorse. As such, the trial court did not abuse its discretion in finding Sloan's lack of remorse to be an aggravating circumstance.

The Indiana Supreme Court has held that "[a] lack of remorse by a defendant who insists upon his innocence is to be regarded only as a modest aggravator." *Bacher v. State*, 686 N.E.2d 791, 801 (Ind. 1997) (citing *Owens v. State*, 544 N.E.2d 1375, 1379 (Ind. 1989)). Further, because a single aggravating circumstance is adequate to justify an enhanced sentence, *Hawkins v. State*, 748 N.E.2d 362, 363 (Ind. 2001), I would conclude that the trial court did not abuse its discretion in imposing a slightly-enhanced thirty-five-year sentence.