Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



ATTORNEY FOR APPELLANT:

**MATTHEW D. ANGLEMEYER**
Marion County Public Defender
Appellate Division
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**J.T. WHITEHEAD**
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| LARRY WOODS, | ) |
| | ) |
| Appellant-Defendant, | ) |
| | ) |
| vs. | ) No. 49A02-1405-CR-327 |
| | ) |
| STATE OF INDIANA, | ) |
| | ) |
| Appellee-Plaintiff. | ) |

APPEAL FROM THE MARION SUPERIOR COURT
The Honorable Kurt M. Eisgruber, Judge
The Honorable Steven J. Rubick, Magistrate
Cause No. 49G01-1301-FA-5925

**December 11, 2014**

**MEMORANDUM DECISION - NOT FOR PUBLICATION**

**CRONE, Judge**

**Case Summary**

Larry Woods appeals his conviction for class A felony child molesting following a bench trial. Woods's sole assertion on appeal is that the trial court abused its discretion when it excluded certain evidence at trial. Finding no abuse of discretion or, in the alternative, finding any error harmless, we affirm.

**Facts and Procedural History**

The evidence most favorable to the conviction indicates that Helania Jones is the mother of A.M., born on June 16, 2003. In 2009, Helania and A.M. lived with Helania's husband, four other adults, and two other children in a house on North Concord Street in Indianapolis. One of the other adults living in the house was Woods. After about four or five months, the entire group moved to another house just behind the house on North Concord Street. On Valentine's Day in 2010, Helania and some of the adults from the house left in the morning to go shopping. A.M., who had not yet started school, stayed home. Woods was not in the home when Helania left but he was present when she returned. Upon her return, Helania noticed that A.M. was very fussy and "wanted to stay to herself, which [] was not like her." Tr. at 17. When Helania asked A.M. what was wrong, A.M. did not answer.

By 2011, A.M. was attending school when her school hosted a speaker who gave a presentation to the children about "good touches" and "bad touches." *Id*. at 46. A.M. spoke with the speaker after the presentation and told the speaker that she had been touched inappropriately by Woods. The speaker reported the allegations, and the Indiana Department

2

of Child Services and the Indianapolis Metropolitan Police Department became involved in an investigation. A.M. and Helania both gave statements which indicated that Woods had molested A.M. During police interviews, Woods admitted to one time lying on a couch with A.M. with his body touching hers.

The State charged Woods with one count of class A felony child molesting and two counts of class C felony child molesting. During a bench trial, A.M. testified that one day after her mom had gone to the store, she was sleeping on the floor in the living room when Woods, who was on the couch, asked A.M. to "[c]ome on the couch" with him. *Id.* at 41. Woods then pulled A.M. up onto the couch by her shirt. Woods put his hand into A.M.'s underpants and between her legs. A.M. stated that she could feel that Woods's hand went inside her body and it "hurt." *Id.* at 44. An adult named Michelle came into the living room and Woods stopped. At the conclusion of the trial, the court found Woods guilty of one count of class A felony child molesting. This appeal ensued.

**Discussion and Decision**

Woods challenges the trial court's decision to exclude certain documentary evidence at trial. A trial court has broad discretion in ruling on the admission or exclusion of evidence. *Palilonis v. State*, 970 N.E.2d 713, 726 (Ind. Ct. App. 2012), *trans. denied*. An abuse of discretion occurs when the trial court's ruling is clearly against the logic, facts, and circumstances presented. *Id.* When reviewing the admissibility of evidence, we do not reweigh evidence, and we consider conflicting evidence most favorable to the trial court's ruling. *Meridith v. State*, 906 N.E.2d 867, 869 (Ind. 2009). A claim of error in the admission

3

or exclusion of evidence is subject to a harmless error analysis, and such claim will not prevail unless a substantial right of the party is affected. *Coleman v. State*, 694 N.E.2d 269, 277 (Ind. 1998). "In determining whether an evidentiary ruling affected a party's substantial rights, the court assesses the probable impact of the evidence on the trier of fact." *Sloan v. State*, 16 N.E.3d 1018, 1026 (Ind. Ct. App. 2014).

During the trial testimony of Indianapolis Metropolitan Police Detective Robbin Myers, Woods moved to admit Defendant's Exhibits A and B which consisted of copies of documents titled "Investigation of Alleged Child Abuse or Neglect" and "Preliminary Report of Alleged Child Abuse or Neglect." Tr. at 82; Exhibit Vol. at 27-34. The original documents were purportedly prepared by the Indiana Department of Child Services ("DCS") during the intake and investigation of A.M.'s molestation allegations. The documents contained statements allegedly made by A.M., Helania, and the school presenter who initially reported the abuse. Due to the ample number of hearsay statements contained in the reports, Woods sought admission of the reports pursuant to Indiana Evidence Rule 803(8), the public records exception to the hearsay rule. The State objected to the admission of the documents on multiple bases, including that the documents were not properly authenticated. The trial court sustained the State's objection and did not admit the exhibits into evidence. We agree with that decision.

Evidence Rule 803(8) provides a hearsay exception for public records which includes in relevant part:

(A) A record or statement of a public office if:
  (i) it sets out:

4

(a) the office's regularly conducted and regularly recorded activities;
(b) a matter observed while under a legal duty to [observe and] report; or
(c) factual findings from a legally authorized investigation; and
(ii) neither the source of the information nor the circumstances indicate a lack of trustworthiness.

This exception to the hearsay rule is based upon the assumption that public officials perform their duties properly without motive or interest other than to submit accurate reports. *Fowler v. State*, 929 N.E.2d 875, 878 (Ind. Ct. App. 2010), *trans. denied*.

Additionally, when an item of evidence is offered as proof, its relevancy depends on a finding that it is what the proponent of the evidence purports it to be. Ind. Evidence Rule 901(a). A public record or report may be authenticated by showing that it (1) was recorded or filed in a public office as authorized by law or (2) is from the public office where items of that kind are kept. Ind. Evidence Rule 901(b)(7). "Typically, a witness provides authenticating testimony or other evidence introduced at trial supports an inference sufficient for authentication." *Dumes v. State*, 718 N.E.2d 1171, 1177 (Ind. Ct. App. 1999), *clarified on reh'g*, 723 N.E.2d 460 (2000) (the testimony of a witness, who need not be the actual record keeper, may establish that the document is from the public office where such items are found). Evidence Rule 902 provides that certain documents are self-authenticating and therefore may be admitted without preliminary proof of genuineness. *Id.* This relieves the tendering party of providing extrinsic proof of authenticity as a condition precedent to admissibility. *Id.*

Here, Woods concedes that neither the actual record keeper nor the DCS representative who prepared or filed the reports was called to testify regarding the

5

authenticity of the reports. As noted by the State during trial, the reports are also lacking any signature by the preparer or anyone else for that matter. Woods makes no claim that the reports were self-authenticating, as not only were the reports unsigned, but they were also not certified by the custodian of the records or any other person authorized to make such certification. *See* Indiana Evidence Rule 902(4) (regarding self-authenticating "Certified Copies of Public Records"). Woods merely claims that Detective Myers's testimony that she had seen the reports before provided a sufficient foundation of authenticity for their admission. Appellant's Br. at 9. Viewing the evidence most favorable to the trial court's ruling, we disagree. The record reveals that Detective Myers played no role in the creation, preparation, or custody of the reports, and, without more, her testimony was insufficient to establish that the reports were genuine and what they were purported to be. Under the circumstances, the trial court did not abuse its discretion when it declined to admit the exhibits into evidence.

Moreover, we agree with the State that even if the trial court improperly excluded the documents, such exclusion was harmless. Woods claims that documents would have aided him in impeaching A.M.'s credibility due to inconsistencies between her trial testimony and some of the statements in the reports. However, we note that even without specific reference to the exhibits, Woods did in fact cross-examine A.M. regarding alleged inconsistencies between her trial testimony and her prior statements. Furthermore, our review of the documents reveals that, in addition to some inconsistencies, the documents contain several statements that are consistent with and corroborate A.M.'s trial testimony, which easily could

have bolstered her credibility, rather than diminished it, in the trial court's view. Based upon the record before us, we cannot say that the trial court's exclusion of the documents affected Woods's substantial rights. *See Sloan*, 16 N.E.3d at 1026. Therefore, we affirm Woods's conviction.

Affirmed.

FRIEDLANDER, J., and KIRSCH, J., concur.