## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



**FILED**

Mar 07 2017, 9:17 am

**CLERK**
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Michael C. Keating
Keating & LaPlante, LLP
Evansville, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Ellen H. Meilaender
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

Michael Gann,

*Appellant-Defendant,*

v.

State of Indiana,

*Appellee-Plaintiff.*

March 7, 2017

Court of Appeals Case No.
82A04-1608-CR-1999

Appeal from the Vanderburgh
Circuit Court.
The Honorable David D. Kiely,
Judge.
Cause No. 82C01-1504-F4-1872

## Friedlander, Senior Judge

[1]     Michael Gann appeals from the trial court's order sentencing him to 14.5 years executed after he pleaded guilty to one count of Level 4 felony causing death when operating a motor vehicle with an ACE (alcohol concentration

equivalent) of .15 or more,[1] two counts of Level 6 felony causing serious bodily injury when operating a motor vehicle with an ACE of .08 or more,[2] and Class B misdemeanor leaving the scene of an accident.[3]

[2] The following facts are gleaned from summaries and statements made by the prosecutor, defense attorney, and detectives at Gann's sentencing hearing. The trial court incorporated the factual foundation from the guilty plea hearing.

[3] On Saturday, March 14, 2015, Gann attended a birthday party held for a co-worker.[4] Gann arrived at the party, bringing with him a beer or two, which he admittedly consumed there. After encouragement by others, including his work supervisor, he then voluntarily participated in a drinking game during which he consumed six to eight shots of 100 proof Fireball Whiskey over the course of 3.5 minutes. He engaged in this conduct after having been previously counseled through a rehabilitation program related to charges filed in 2001 for operating a motor vehicle while intoxicated, which were ultimately dismissed after completion of the deferral program.

---

[1] Ind. Code § 9-30-5-5(b) (2013).

[2] Ind. Code § 9-30-5-4(a) (2013).

[3] Ind. Code § 9-26-1-1.1(b) (2015).

[4] During sentencing, the trial court made reference to Gann's attendance at a family gathering prior to going to his co-worker's party. Gann consumed five beers over the course of two to three hours at the first gathering prior to driving to his co-worker's party.

[4]     Prior to leaving the party in his Jeep Cherokee, Gann was observed vomiting. After he left the party, he was later observed driving his vehicle into the back of a parked and unoccupied vehicle at a gas station. Although he sustained damage to his vehicle as well as damaging the other, he left the scene of the accident and continued driving. Witnesses there attempted to follow Gann, but to no avail.

[5]     Gann traveled southbound on University Parkway. As Gann approached Hogue Road, his vehicle crossed the median into the northbound lanes, and he continued driving in the wrong direction for that lane. Gann struck head-on a Hyundai being driven in the proper lane by Kurt Osborne, a teenager, whose passengers included fellow teenagers Logan Brown and Hannah Miller. There was no evidence at the scene of the accident that Gann had braked prior to the impact with the vehicle driven by Osborne. Gann's ACE was .27.[5]

[6]     Logan Brown, the front-seat passenger, was killed as a result of the accident.

[7]     Hannah Miller, the back-seat passenger, suffered a lacerated spleen, a lacerated liver, a detached and collapsed lung, a clavicle fracture, multiple vertebra fractures, and multiple rib fractures, in addition to chronic back pain. She was unable to return to school to finish her sophomore year and suffers from panic attacks. Her mother sleeps with her to comfort her from persisting trauma. She

---

[5] According to the discharge reports of hospital personnel, Gann's blood alcohol content was measured at the hospital as .391.

has difficulty riding in vehicles, and although now eighteen years old, does not have a permit or her driver's license. She suffers from panic attacks at the sound of sirens and experiences visions and smells of the accident at night.

[8] Kurt Osborne suffered a significant brain injury, multiple rib fractures, a dislocated hip, and a lacerated liver. He was hospitalized for weeks, and once removed from sedation, was able to speak, but what he said did not make any sense. He was wheelchair bound after leaving the hospital, was unable to think logically, and had to have daily speech and physical therapy to regain brain function. His father was required to take five week's leave from his job and his mother was forced to quit her job in order to tend to his needs.

[9] The State charged Gann as described above, and he pleaded guilty to all charges. After a sentencing hearing held on August 15, 2016, the trial court imposed consecutive sentences of ten years for the Level 4 felony conviction, two years for each of the Level 6 felony convictions, and 180 days for the Class B misdemeanor offense, for an aggregate sentence of 14.5 years. Gann now appeals.

[10] First, Gann claims that the trial court abused its discretion by imposing enhanced and consecutive sentences. Gann argues that the trial court improperly considered elements of the crime as aggravating circumstances and failed to articulate its reasons for imposing enhanced and consecutive sentences. He argues that during sentencing the trial court improperly considered the aggravating circumstances of his decision to drink and drive and his blood

alcohol concentration level. He also claims the trial court failed to articulate in its sentencing statement why the aggravating circumstances called for both enhanced and consecutive sentences.

[11] Sentencing decisions rest within the sound discretion of the trial court, and as long as a sentence is within the statutory range, it is subject to review only for an abuse of discretion. *Anglemyer v. State*, 868 N.E.2d 482 (Ind. 2007), *clarified on reh'g*, 875 N.E.2d 218. An abuse of discretion occurs where the trial court's decision is clearly against the logic and effect of the facts and circumstances before it, or the reasonable, probable, and actual deductions to be drawn therefrom. *Sloan v. State*, 16 N.E.3d 1018 (Ind. Ct. App. 2014). A trial court may abuse its discretion if the sentencing statement omits mitigating factors that are clearly supported by the record and advanced for consideration or identifies aggravating factors that are not supported by the record. *Anglemyer*, 868 N.E.2d 482.

[12] Trial courts are required to enter sentencing statements whenever imposing a sentence for a felony offense. *Id.* The statement must include a reasonably detailed recitation of the trial court's reasons for imposing a particular sentence. *Id.* If the trial court includes aggravating or mitigating circumstances in its sentencing statement, it must identify all of the significant circumstances and explain why each circumstance has been determined to be aggravating or mitigating. *Id.* When reviewing the sufficiency of the sentencing statement, we examine both the trial court's written and oral statements. *McElroy v. State*, 865 N.E.2d 584 (Ind. 2007).

[13]   While we acknowledge that a material element of a crime cannot be an aggravating circumstance, the nature and circumstances of the crime can be an aggravator. *Caraway v. State*, 959 N.E.2d 847 (Ind. Ct. App. 2011). If the nature of the offense is identified as an aggravating factor, the trial court must discuss facts that go beyond the statutory requirements of the crime. *McElroy*, 865 N.E.2d. 584. Here, the nature and circumstances of the crimes, as discussed by the trial court, go beyond the statutory requirements of the crimes.

[14]   In order to sustain a conviction of driving a motor vehicle while at least twenty-one years of age, causing the death of another person, as a Level 4 felony, it is required that the defendant's alcohol concentration equivalent be at least .15. Ind. Code § 9-30-5-5(b). Here, Gann's ACE was .27, well beyond, and almost double, the statutory requirement for the offense.[6] Consideration of that factor does not constitute reversible error.

[15]   Furthermore, as to his convictions of Level 6 felony causing serious bodily injury when operating a motor vehicle with an ACE of .08 or more, Gann's ACE was more than three times the requirement for the convictions. The additional level of intoxication, beyond the minimum statutory requirement, was an appropriate consideration in terms of sentencing.

[16]   Additionally, Indiana Code section 35-31.5-2-292 (2012), defines serious bodily injury, applicable to this case, as injury that creates a substantial risk of death or

---

[6] Evidence suggests that his ACE was potentially even more elevated than charged.

serious permanent disfigurement, unconsciousness, extreme pain, or permanent or protracted loss or impairment of the function of a bodily member or organ.

[17] Hannah Miller suffered a lacerated spleen, a lacerated liver, a detached and collapsed lung, a clavicle fracture, multiple vertebra fractures, and multiple rib fractures, in addition to chronic back pain. Miller stated she is still broken and in pain, suffering from chronic back pain and is still not 100%. Any of those injuries standing alone would meet the statutory definition of serious bodily injury. Consideration of the additional injuries, beyond any single injury satisfying the elements of the offense, does not constitute reversible error for purposes of sentencing.

[18] With respect to Kurt Osborne's injuries, he suffered a significant brain injury, multiple rib fractures, a dislocated hip, and a lacerated liver. He was hospitalized for weeks, and once removed from sedation, was able to speak, but what he said did not make any sense. He was wheelchair bound after leaving the hospital, was unable to think logically, and had to have daily speech and physical therapy to regain brain function. His father was required to take five week's leave from his job and his mother was forced to quit her job in order to care for him. Any of those injuries standing alone would meet the statutory definition of serious bodily injury. Consideration of the additional injuries, beyond any single injury identified for purposes of satisfying the sufficiency of the evidence, for purposes of sentencing does not constitute reversible error.

[19] The particularized injuries, which go beyond those necessary to support the convictions for these offenses, suffered by the surviving victims of Gann's criminal offenses are supported by the record and were properly considered by the trial court for purposes of sentencing. "Even when serious bodily injury is an element of the crime charged, the severity of the injury may serve as a valid aggravating circumstance." *Patterson v. State,* 846 N.E.2d 723, 731 (Ind. Ct. App. 2006) (relying on *Lang v. State*, 461 N.E.2d 1110 (Ind. 1984) (finding it was not an abuse of discretion to use the serious nature of the injuries to the victim as an aggravating circumstance to enhance the sentence)). We find no reversible error.

[20] Turning to the issue of whether consecutive sentences were proper, we observe that trial courts are permitted to impose consecutive sentences if warranted by the aggravating circumstances. *Monroe v. State*, 886 N.E.2d 578 (Ind. 2008). The trial court must, however, articulate, explain, and evaluate the aggravating circumstances that support the sentence before imposing a consecutive sentence. *Id.*

[21] This order lacks specificity with regard to an explanation for the consecutive sentences imposed. Nonetheless, in such a circumstance, remand for resentencing is not required where the rationale for consecutive sentences is apparent on the face of the record. *Lewis v. State*, 31 N.E.3d 539 (Ind. Ct. App. 2015). Where there are multiple victims, as was the case here, that factor supports the imposition of consecutive sentences. *Id.* Additionally, the trial court specifically noted that Gann's felony convictions were considered violent

crimes. *See* Ind. Code §§ 35-50-1-2(a)(14) & (15) (2015) (listing applicable crimes of violence); Ind. Code § 35-38-1-7.1(a)(4)(A) (2014) (aggravating circumstances include crimes of violence). The trial court did not err in imposing the enhanced, consecutive sentences.

[22] Next, Gann contends that his sentence is inappropriate in light of the nature of the offense and the character of the offender, seeking review under Indiana Appellate Rule 7(B). Under that rule, we may revise a sentence authorized by statute if we find that the sentence is inappropriate in light of the nature of the offense and the character of the offender. App. Rule 7(B).

[23] When a defendant requests appellate review and revision of his sentence, we have the power to affirm or reduce the sentence. *Akard v. State*, 937 N.E.2d 811 (Ind. 2010). In conducting our review, we may consider all aspects of the penal consequences imposed by the trial court in sentencing, i.e., whether it consists of executed time, probation, suspension, home detention, or placement in community corrections, and whether the sentences are ordered to run concurrently or consecutively. *Davidson v. State*, 926 N.E.2d 1023 (Ind. 2010). We do not look to see whether the defendant's sentence is appropriate or if another sentence might be more appropriate; rather, the test is whether the sentence is "inappropriate." *Fonner v. State*, 876 N.E.2d 340, 344 (Ind. Ct. App. 2007). A defendant bears the burden of persuading this Court that his sentence meets the inappropriateness standard, *Anglemyer*, 868 N.E.2d 482, and he must do so under both parts of the test. *Childress v. State*, 848 N.E.2d 1073 (Ind. 2006). Our resolution of whether a sentence is appropriate turns on myriad

factors which come to light in a given case, including our sense of the culpability of the defendant, the severity of the crime, and the damage done to others. *Cardwell v. State*, 895 N.E.2d 1219 (Ind. 2008).

[24] With respect to the nature of the offense, we conclude that the sentence is not inappropriate. Gann attended a family gathering during which he consumed alcohol, knowing he had plans to drive to another event. After leaving that gathering, he drove to his co-worker's birthday party where he consumed more beer and then participated in a drinking game. Gann's ACE was between .27 and .391. Although Gann was observed vomiting before leaving the party, he got into his Jeep Cherokee and drove. He caused a high impact accident with an unoccupied vehicle parked at a gas station. He then left the scene of that accident, without reporting it or waiting for assistance, and continued driving. His vehicle crossed the median where he struck a vehicle head-on, causing one of the teenagers in the car to die, and causing the other two teenagers serious bodily injury. Some of the effects of the collision will affect the two surviving children both physically and emotionally for a long time.

[25] Regarding the character of the offender, the record supports the trial court's choice of sentence. Gann was the main income producer in his family, supporting his wife and two children, both of whom suffer from health conditions. Even after having received counseling related to prior charges of operating a vehicle while intoxicated, Gann chose to drink and drive while he was highly impaired on March 14, 2015. He chose to leave the scene of the first accident he caused that evening, continuing to drive. He then collided with the

vehicle, resulting in the death of one teenager and the serious bodily injury of two others.

[26] Gann did agree to plead guilty to the charges filed against him. His statement to the trial court, however, reflects his projection of fault for the accident. He stated that he was "upset, though, that there were opportunities for people to stop me from driving impaired that they did not take. I wish someone at the party or at the gas station where the first accident happened had stopped me." Appellant's App. Vol II, p. 87. Even after these events, Gann contends that he does not have a problem with alcohol. *Id.* at 140-41. After the accidents, the help Gann sought was for anxiety and depression resulting from the accidents and anxiety about his upcoming sentencing, not for his issues with alcohol abuse.

[27] Gann had previously received the benefit of counseling for his prior alcohol-related charges. Nonetheless, he continued to consume alcohol and drank to excess on the night of the accidents. The sentence is not inappropriate in light of the nature of the offense and the character of the offender.

[28] In light of the foregoing, the trial court's judgment is affirmed.

[29] Judgment affirmed.

Bradford, J., and Brown, J., concur.