## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Nov 22 2017, 5:46 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Carlos I. Carrillo
Greenwood, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Tyler G. Banks
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Brandon C. Staggs,<br>*Appellant-Defendant,*<br><br>v.<br><br>State of Indiana,<br>*Appellee-Plaintiff* | November 22, 2017<br><br>Court of Appeals Case No.<br>79A02-1705-CR-1152<br><br>Appeal from the Tippecanoe<br>Superior Court<br><br>The Honorable Randy J. Williams,<br>Judge<br><br>Trial Court Cause No.<br>79D01-1608-F1-13 |

**Crone, Judge.**

## Case Summary

[1] Brandon C. Staggs was the subject of a no-contact order concerning his three-week-old baby. Notwithstanding the order, he became intoxicated with illegal drugs and then slept with the baby, who died from positional asphyxiation. Faced with a seven-count criminal information, Staggs agreed to plead guilty to level 1 felony neglect of a dependent resulting in death, level 5 felony narcotics possession, and level 6 felony maintaining a common nuisance, in exchange for the dismissal of the remaining counts. Per the plea agreement, sentencing was left to the trial court's discretion. The court ultimately sentenced Staggs to an aggregate thirty-nine-year term. In this appeal, Staggs raises several issues, most of which are unavailable to him either because of his guilty plea or because they are proper for postconviction proceedings rather than direct appeal. He also challenges the trial court's application of aggravating factors during sentencing as well as the appropriateness of his sentence. Finding that the trial court acted within its discretion in its identification of aggravators and that Staggs has failed to meet his burden of demonstrating that his sentence is inappropriate, we affirm.

## Facts and Procedural History

[2] In 2002, Staggs slept with his two-month-old baby, who died of positional asphyxiation. He had two other children with his now ex-wife. In 2013, his child K.S. was paralyzed following an accident in which Staggs was the driver and for which Staggs was investigated concerning intoxication. Staggs's ex-

wife eventually gained full custody of K.S. and the couple's other surviving child.

[3]     In early June 2016, Staggs and Sara Martin had a baby boy, Z.S. Because of his entanglements with the Department of Child Services ("DCS") in children in need of services ("CHINS") proceedings, Staggs was under a no-contact order regarding Z.S. On June 27, 2016, Martin had Z.S. in her care while she cleaned out the home of her recently deceased mother. She took Z.S. with her to buy heroin and then injected herself once at her mother's house and then at Staggs's house. She overdosed, and Jason Vanhorn, a friend of both Staggs and Martin, drove her, Staggs, and Z.S. to the hospital. An attending physician later told police that Staggs appeared to be under the influence of drugs while at the hospital.

[4]     After a few hours, the group left Martin at the hospital and went to Staggs's house. Initially, Vanhorn watched Z.S. while Staggs slept on the sofa. Later, Vanhorn awakened Staggs and informed him that he was leaving. Staggs took Z.S. from Vanhorn and slept with him. Several hours later, another friend, "T.J.," entered Staggs's living room and found Staggs sitting on the sofa, asleep. He found Z.S. between the cushions, bluish in color and totally nonresponsive. T.J. attempted to arouse Staggs but described Staggs as largely nonresponsive and apparently under the influence of drugs. Shortly thereafter, emergency personnel arrived and Z.S. was pronounced dead. An autopsy revealed that he died of positional asphyxiation. Police found heroin in a lunch box underneath Staggs's sofa. Later that day, Staggs tested positive for

amphetamine, methamphetamine, benzodiazepenes, cocaine, morphine, and marijuana.

[5] The State charged Staggs with level 1 felony neglect of a dependent resulting in death, level 5 felony narcotics possession (in the presence of a child under age eighteen), level 6 felony possession of a controlled substance, class B misdemeanor marijuana possession, class A misdemeanor possession of paraphernalia, level 6 felony maintaining a common nuisance, and class A misdemeanor marijuana possession. Via an open plea agreement, Staggs pled guilty to neglect of a dependent causing death, narcotics possession, and maintaining a common nuisance, in exchange for the dismissal of the remaining four counts.

[6] At the guilty plea hearing, the State established a factual basis, which the trial court found sufficient. The court explained the applicable sentencing ranges, and accepted Staggs's guilty plea. During sentencing, the court heard testimony from several witnesses and identified as aggravating circumstances Staggs's significant history of substance abuse, the significant extent of the harm, injury, and loss suffered by the victim beyond the elements of the offenses, the victim's young age, Staggs's criminal history and previous probation and rehabilitation failures, and the fact that he was out on bond and was in violation of a no-contact order when he committed the current offenses. The court identified as mitigating circumstances Staggs's guilty plea, cooperation, sense of responsibility, and support of family and friends. The trial court sentenced Staggs to thirty-four years for level 1 felony neglect, five years for level 5 felony

narcotics possession, and two years for level 6 felony maintaining a common nuisance, with the last two terms to run concurrent with each other and consecutive to the first felony. His thirty-nine-year aggregate sentence comprised thirty-seven years executed, with thirty-five years in the Department of Correction ("DOC"), two years in community corrections, and two years suspended to probation.

[7] Staggs now appeals. Additional facts will be provided as necessary.

## Discussion and Decision

## Section 1 – Because he pled guilty by plea agreement in exchange for the dismissal of four counts, Staggs is precluded from attacking his convictions on double jeopardy grounds.

[8] Maintaining that his convictions for neglect, narcotics possession, and maintaining a common nuisance were all based on the same evidence, Staggs claims that his convictions for the lesser offenses of neglect and nuisance must be vacated on double jeopardy grounds. "To find a double jeopardy violation under the actual evidence test, we must conclude that there is 'a reasonable possibility that the evidentiary facts used by the factfinder to establish the essential element of one offense may also have been used to establish the essential elements of a second challenged offense.'" *Garrett v. State*, 992 N.E.2d 710, 719 (Ind. 2013) (quoting *Richardson v. State*, 717 N.E.2d 32, 53 (Ind. 1999)). However, "defendants who plead guilty to achieve favorable outcomes give up a plethora of substantive claims and procedural rights, such as challenges to convictions that would otherwise constitute double jeopardy."

*Lee v. State*, 816 N.E.2d 35, 40 (Ind. 2004) (quoting *Davis v. State*, 771 N.E.2d 647, 649 n.4 (Ind. 2002)).

[9] Here, Staggs faced a seven-count information and pled guilty by plea agreement to three counts, in exchange for the dismissal of four counts (one felony and three misdemeanors). He clearly received a benefit from his plea agreement, and we are unpersuaded by his labored attempts to characterize his plea agreement to the contrary. Staggs is precluded from raising double jeopardy in this appeal.[1]

## Section 2 – Staggs waived any challenge to the trial court's decision to allow the State to amend the charging information.

[10] Staggs next asserts that the trial court erred in allowing the State to amend the charging information. At sentencing, the State verbally requested an amendment to the narcotics possession charge to change "knowingly and intentionally" to "knowingly or intentionally." Appellant's App. Vol. 2 at 9; Tr. Vol. 2 at 12. Staggs was present in person and by counsel, and when the trial court asked Staggs whether he understood the amendment, he answered affirmatively. As such, he had the opportunity to be heard. Yet, he neither objected nor requested a continuance. As such, he has waived consideration of

---

[1] We note that a double jeopardy violation under the actual evidence test presupposes the development of an evidentiary record such that the factfinder (jury or trial court) uses the same evidentiary facts to convict the defendant on multiple counts. Here, the record was developed only to the extent necessary to establish a factual basis for Staggs's guilty plea as to each count. Moreover, we note that Staggs has cited no authority for his proposition that the fundamental error doctrine rescues a double jeopardy claim that is otherwise precluded by a beneficial plea agreement.

this issue on appeal. *See Absher v. State*, 866 N.E.2d 350, 355 (Ind. 2007) (failure to object to amendment to charging information waives issue for review unless fundamental error occurred).

[11] Waiver notwithstanding, Indiana Code Section 35-34-1-5(a)(5) allows the State on motion at any time to amend the charging information because of "any immaterial defect, including … the use of alternate or disjunctive allegations to the acts, means, intents, or results charged." Here, the State requested the amendment simply to correct a clerical error in the mens rea element for the narcotics possession charge by changing the conjunctive to the disjunctive. Thus, the amendment was clearly within the dictates of the statute, and the trial court properly granted the State's request.

## Section 3 – Staggs's challenge to the sufficiency of the factual basis to support his guilty plea is not reviewable on direct appeal.

[12] Staggs also contends that the State failed to establish a factual basis to support his pleas of guilty to narcotics possession and maintaining a common nuisance. Because this argument amounts to an attack on his convictions, he is precluded from raising it on direct appeal and must instead raise it in a petition for postconviction relief. *See Stanley v. State*, 849 N.E.2d 626, 630 (Ind. Ct. App. 2006) (error premised on insufficiency of factual basis for guilty plea must be brought by petition for postconviction relief).

## Section 4 – The trial court did not err in advising Staggs concerning all aspects of his potential sentence.

[13]    Staggs also submits that the trial court failed to properly advise him concerning the possibility of fines and consecutive sentencing. He essentially argues that proper advisements would have affected his decision to plead guilty.[2] In so arguing, he attacks the voluntariness of his plea, which he may not do on direct appeal. *See M.Y. v. State*, 681 N.E.2d 1178, 1179 (Ind. Ct. App. 1997) (criminal defendant is prohibited from challenging validity of his guilty plea by direct appeal, but must instead raise issue via petition for postconviction relief) (citing *Tumulty v. State*, 666 N.E.2d 394, 395-96 (Ind. 1996)). That said, we briefly note that the trial court did not ultimately impose a fine as part of Staggs's sentence but nevertheless advised him at the guilty plea hearing that he could be subject to a fine of up to $10,000. Tr. Vol. 2 at 15. As for the possibility of consecutive sentencing, the trial court did not use the word "consecutive," but it properly and specifically addressed his maximum sentence exposure for each offense as well as the maximum aggregate sentence exposure, which as a matter of mathematics included a potential consecutive sentencing component. *See id.* at 13-15 (trial court's statement of intent to sentence Staggs to somewhere between twenty and forty-two years, which could exceed maximum for level 1 felony).

---

[2] We note that these arguments are phrased in terms similar to those applicable to proving the prejudice prong of an ineffective assistance of counsel claim. Staggs did not raise ineffective assistance of counsel in this direct appeal.

# Section 5 – The trial court acted within its discretion in its treatment of aggravating factors during sentencing.

[14] Staggs also challenges the trial court's treatment of aggravating factors during sentencing. Sentencing decisions rest within the sound discretion of the trial court, and so long as a sentence is within the statutory range, it is subject to review only for an abuse of discretion. *Anglemyer v. State*, 868 N.E.2d 482, 490 (Ind. 2007), *clarified on reh'g*, 875 N.E.2d 218. An abuse of discretion occurs where the trial court's decision is clearly against the logic and effect of the facts and circumstances before it, or the reasonable, probable, and actual deductions to be drawn therefrom. *Sloan v. State*, 16 N.E.3d 1018, 1026 (Ind. Ct. App. 2014). One of the ways in which a trial court may abuse its discretion is if the sentencing statement identifies aggravating factors that "are improper as a matter of law." *Anglemyer*, 868 N.E.2d at 491.

[15] Staggs maintains that the trial court improperly designated elements of his neglect and narcotics offenses as aggravators. A trial court may not use a material element of the offense as an aggravating factor, but it may find the nature and particularized circumstances surrounding the offense to be an aggravating factor. *Caraway v. State*, 959 N.E.2d 847, 850 (Ind. Ct. App. 2011), *trans. denied* (2012). In other words, "[w]here a trial court's reason for imposing a sentence greater than the advisory sentence includes material elements of the offense, absent something unique about the circumstances that would justify deviating from the advisory sentence, that reason is 'improper as a matter of law.'" *Gomillia v. State*, 13 N.E.3d 846, 852-53 (Ind. 2014) (quoting *Anglemyer*,

868 N.E.2d at 491). "Even if the trial court relied on an improper factor under this aggravating circumstance, the sentence may be upheld so long as [t]he remaining components of that aggravator were proper." *Id.* at 853 (quoting *McCann v. State*, 749 N.E.2d 1116, 1120 (Ind. 2001)).

[16] Staggs specifically challenges the trial court's use of Z.S.'s age as an aggravator pertaining to his narcotics offense where the circumstance elevating the offense from a level 6 to a level 5 felony involved "the person committ[ing] the offense in the physical presence of a child less than eighteen (18) years of age, knowing that the child was present and might be able to see or hear the offense." Ind. Code § 35-48-1-16.5(6). Staggs argues that Z.S.'s tender age of three weeks should work to his advantage since the child, though present, seeing, and hearing, was too young to understand and carry with him any lasting impressions of his father's narcotics use. However, in reviewing the sentencing order, we do not read this aggravator as having been applied specifically to the narcotics offense. Rather, the trial court merely listed it among the other aggravators and did not specify that it was attaching Z.S.'s age to any particular count. The court simply used the phrase, "the victim was under twelve years of age." Appellant's App. Vol. 2 at 43. This language tracks Indiana Code Section 35-38-1-7.1(a)(3), which directly addresses aggravating factors that the court may consider, including that "[t]he *victim* of the offense was less than twelve (12) years of age." (Emphasis added.) *Cf.* Ind. Code § 35-48-1-16.5 (setting threshold age of less than eighteen years as basis for elevating defendant's narcotics offense to level 5 felony). In short, Z.S.'s tender age left

him particularly dependent and vulnerable to harm, whether it be due to Staggs's neglect,[3] drug use, or running a drug house. The trial court acted within its discretion in identifying Z.S.'s age as an aggravating factor.

[17] Staggs also cites as an improper aggravator "that the harm, injury, or loss suffered by the victim was significant and greater than the elements necessary to prove the commission of the offense." Appellant's App. Vol. 2 at 42. Presumably, though not specifically stated, the trial court was referencing the neglect of a dependent offense. *See* Ind. Code § 35-38-1-7.1(a)(1), -(a)(3) (in determining what sentence to impose, trial court may consider as aggravating circumstances that harm, injury, loss, or damage suffered by victim was significant and greater than elements necessary to prove offense and that *victim* was under age twelve). Staggs argues that the elevated version of the neglect offense makes the victim's "death" a material element and that the extent of harm, injury, and loss suffered by the victim could not exceed death. However, this case involves not only the tragic death of an infant due to careless sleeping arrangements and a parent's drug-induced stupor but also the unique circumstance of Staggs being under an order from the CHINS court that prohibited him from being in Z.S.'s presence under any circumstances. In short, Z.S. never should have been in such perilous hands. The trial court did not abuse its discretion in its treatment of aggravating circumstances.

---

[3] In many neglect of a dependent cases, this Court has affirmed the trial court's use of a victim's tender age as an aggravating factor. *See, e.g.*, *Edwards v. State*, 842 N.E.2d 849, 855 (Ind. Ct. App. 2006) (fifteen-month-old victim); *Kile v. State*, 729 N.E.2d 211, 214 (Ind. Ct. App. 2000) (six-year-old victim); *Mallory v. State*, 563 N.E.2d 640, 647-48 (Ind. Ct. App. 1990) (six-year-old victim), *trans. denied* (1991).

## Section 6 – Staggs has failed to meet his burden of demonstrating that his sentence is inappropriate in light of the nature of the offenses and his character.

[18] Finally, Staggs asks that we review and revise his sentence pursuant to Indiana Appellate Rule 7(B), which states that we "may revise a sentence authorized by statute if, after due consideration of the trial court's decision, [this] Court finds that the sentence is inappropriate in light of the nature of the offense and the character of the offender." When a defendant requests appellate review and revision of his sentence, we have the power to affirm or reduce the sentence. *Akard v. State*, 937 N.E.2d 811, 813 (Ind. 2010). In conducting our review, we may consider all aspects of the penal consequences imposed by the trial court in sentencing, i.e., whether it consists of executed time, probation, suspension, home detention, or placement in community corrections, and whether the sentences run concurrently or consecutively. *Davidson v. State*, 926 N.E.2d 1023, 1025 (Ind. 2010). We do not look to see whether the defendant's sentence is appropriate or if another sentence might be *more* appropriate; rather, the test is whether the sentence is "inappropriate." *Fonner v. State*, 876 N.E.2d 340, 344 (Ind. Ct. App. 2007). A defendant bears the burden of persuading this Court that his sentence meets the inappropriateness standard. *Anglemyer*, 868 N.E.2d at 490.

[19] In considering the nature of Staggs's offenses, "the advisory sentence is the starting point the Legislature has selected as an appropriate sentence." *Id*. at 494. When determining the appropriateness of a sentence that deviates from an

advisory sentence, we consider whether there is anything more or less egregious about the offense as committed by the defendant that "makes it different from the typical offense accounted for by the legislature when it set the advisory sentence." *Holloway v. State*, 950 N.E.2d 803, 807 (Ind. Ct. App. 2011).

[20] The sentencing range for a level 1 felony is twenty to forty years, with an advisory term of thirty years. Ind. Code § 35-50-2-4(b). A level 5 felony carries a sentencing range of one to six years, with a three-year advisory term, and a level 6 felony carries a range of six months to two and one-half years, with a one-year advisory term. Ind. Code §§ 35-50-2-6(b); -7(b). Staggs's thirty-nine-year aggregate sentence comprises a thirty-four-year term for level 1 felony neglect, a five-year term for level 5 felony narcotics possession, and a two-year term for level 6 felony maintaining a common nuisance, with the last two to run concurrent to each other and consecutive to the first. The court executed thirty-seven years (thirty-five years in the DOC and two years in community corrections), followed by two years' probation.

[21] The nature of Staggs's offenses is more egregious than typical offenses in those classifications. As discussed, three-week-old Z.S. died from sleeping with Staggs, but even this was not a garden-variety case of asphyxiation. Rather, Staggs was in such a drug-induced stupor that he did not (and could not) even detect any positional changes that Z.S. had made, let alone make any potentially life-saving positional adjustments. He was passed out, and the baby was eventually found between the sofa cushions. He took drugs at his home and then helped inject Martin, who had already injected drugs and had to be

taken to the hospital shortly thereafter due to an overdose. Both Staggs and Martin used drugs while Z.S. was present and despite the CHINS court's no-contact order. Staggs was not supposed to be in Z.S.'s presence under any circumstances, yet he violated that order and the consequences were devastating. The circumstances surrounding Staggs's offenses support a sentence above the advisory.

[22] Similarly, Staggs's character does not merit a shorter sentence. We conduct our review of his character by engaging in a broad consideration of his qualities. *Aslinger v. State*, 2 N.E.3d 84, 95 (Ind. Ct. App. 2014), *clarified on other grounds on reh'g*, 11 N.E.3d 571. Based on our review of the record, we find Staggs to be a serial drug user and traffic violator who has an extremely poor record of responding to lenient sentencing options. His criminal record spans decades, and as a juvenile, he had three true findings for theft, one for burglary, and one for criminal mischief. As a young adult, he had several convictions for underage consumption of alcohol and a felony conviction for maintaining a common nuisance. He has numerous misdemeanor traffic offenses, which eventually led to a felony conviction for operating as a habitual traffic violator. He also has a felony domestic battery conviction and two felony drug-related convictions. His criminal record is peppered with entries for failure to appear, probation violations, and revocations from probation and/or community corrections. He has demonstrated no regard for court orders, and as discussed, his violation of the CHINS court's no-contact order had tragic consequences.

[23] Staggs has expressed remorse and love for his family. He indicates that he believes he can be successful in cleaning up his life. Yet, he has continued to abuse drugs and has not successfully completed the rehabilitation programs offered in the past. He has failed to learn from previous tragic instances involving his other children, with one baby having died from sleeping with him in 2002 and another child being confined to a wheelchair due to his driving left of center and causing a serious auto accident.

[24] Simply put, Staggs has failed to demonstrate that his sentence is inappropriate in light of the nature of the offenses and his character. Accordingly, we affirm his sentence.

[25] Affirmed

Vaidik, C.J., and Mathias, J., concur.